R. B. BRYAN v. JOHN WALKER and others.

Military officers charged with a particular duty, may take private property for public use without making themselves trespassers, but in such cases, the necessity must be urgent, such as will not admit of delay, and where action upon the part of *civil* authority in providing for the want, will be too late.

The burden of proving such exigency, in case of suit, devolves upon the defendants:

*Therefore*, where all that the case showed, was, that a wagon and two mules of the plaintiff had been seized in January 1863, in Wilkes County, by the defendant commanding a detachment of Confederate troops, under the *parol* orders of a Brigadier-General, for the transportation service of the detachment ; and nothing appeared as to the exigency of the necessity (if any) for such service ; *Held*, that the defendants had not made out a defense.

The State " Amnesty Act" of 1866, does not include cases of *civil* remedy for private injuries ; unless (sect. 4) when the injury occurred under some *law*, or authority *purporting to be a law, of the State*; which the *parol orders* here could not pretend to be.

*Quere* as to the power of the State to pass such an act in regard to civil remedies for injuries ?

TROVER for two mules, tried before *Mitchell, J.*, at Fall Term, 1869, of WILKES Court.

The facts were, that in 1863, Robert F. Hoke, then a Brigadier-General in the service of the Confederate States, commanding two regiments in Wilkes County, issued a parol order to the defendant, commanding a detachment of soldiers near the plaintiff's residence, to distrain, for the transportation service of such detachment, a wagon, and mules. Thereupon the defendant took the mules mentioned in the declaration.

By consent, a verdict was rendered for the plaintiff, for $350.00, subject to the opinion of the Court, &c. His Honor afterwards set aside the verdict, and gave judgment of non-suit.

The plaintiff thereupon appealed.

*Boyden & Bailey* for the appellant.
*No Counsel, contra.*

Settle, J.    This is an action of trover for the conversion of two mules.

The defense relied upon, arises out of the following facts: In 1863, Robt. F. Hoke, Brig. Gen'l., in the service of the Confederate Government, and commanding two regiments in that service in Wilkes County, by parol, issued an order to an officer, commanding a detachment of his soldiers, in the vicinity of plaintiff's plantation, to distrain, for the transportation service of his detachment, a wagon and two mules. It is admitted that the mules were taken in pursuance of said order ; upon the trial, a verdict was returned, by consent, in favor of the plaintiff, subject to the opinion of the Court on the question of law reserved ; and his Honor being of opinion that the order of Gen'l. Hoke was a sufficient justification for the conversion, set aside the verdict, and gave judgment for the defendant.   None of the evidence accompanies the statement of the case sent to this Court ; we simply have the verdict of the jury establishing the fact of the conversion, and the order of Gen'l. Hoke, as the defense.

The case presents no question as between the rightful government, and its citizens in rebellion ; and we are therefore relieved from the consideration of the delicate and embarrassing questions growing out of cases where the owner has done something by which he has forfeited his rights.

Nothing appears, save the fact that the defendants, who were Confederate soldiers, operating in North Carolina, a State then subject to the Confederate authority, took the private property of the plaintiff without compensation, in Wilkes County, for the transportation service of General Hoke's detachment.   Admitting the right of a military officer in a case of extreme necessity, for the safety of the government, or the army, to take private property for the public service ; they have here shown no immediate pressing necessity, in which they were compelled to act promptly, having no time to acquire the property according to law.   The burden of showing such necessity, rests upon the defendants.

As a matter of history, we know that the County of Wilkes was not the theatre of war. It was comparatively quiet, the forces of neither army occupied it in numbers, or for any length of time.

We are fortunate in having a decision of the Supreme Court of the United States directly in point, declaring the law, as it has always been held in England and in this country. In citing the case of *Mitchell* v. *Harmony*, 13 How. 115, we will remark that the opinion of the Court was delivered by Taney, C. J., before the minds of our people became confused by questions growing out of the late rebellion. The defendants certainly cannot claim to be in a better situation in respect to the private property of a citizen of North Carolina, than the officers and soldiers of the army of the United States were, in respect to the property of our citizens, when they invaded Mexico.

Mitchell was an officer of the army, and was sued in an action of trespass by Harmony, for seizing his property in the Mexican State of Chihuahua. Harmony was a trader, engaged in a business recognized and allowed by the United States Government.

The declaration charged that the defendant seized and converted to his own use, the horses, mules, wagons, &c., of the plaintiff.

The defendant pleaded not guilty, and specially "that war existed at the time, between the United States and Mexico; that he was a Lieutenant Colonel, &c., forming a part of the military force of the United States, and under the command of Colonel A. W. Doniphan, and he justifies the taking, &c., under and in virtue of the order, to that effect, of his superior and commanding officer, Col. Doniphan; that the order was a lawful one, which he was bound to obey, and that he was no otherwise instrumental in the alleged trespass."

The jury found a verdict for the plaintiff, for $90,806.44, for which and the costs, amounting to $5,048.94, the Court gave judgment for Harmony.

The case was brought up by writ of error, and the Supreme Court of the United States, in sustaining the judgment of the Circuit Court, say " where the owner has done nothing to forfeit his rights, every public officer is bound to respect them, whether he finds the property in a foreign or hostile country, or in his own. There are, without doubt, occasions in which private property may lawfully be taken possession of, or destroyed, to prevent it from falling into the hands of the public enemy ; and also where a military officer, charged with a particular duty, may impress private property into the public service, or take it for public use. Unquestionably, in such cases the Government is bound to make full compensation to the owner; but the officer is not a trespasser. But we are clearly of opinion, that in all of these cases, the danger must be immediate and impending ; or the necessity urgent for the public service, such as will not admit of delay, and where the action of the civil authority would be too late in providing the means which the occasion calls for. It is impossible to define the particular circumstances of danger or necessity, in which this power may be lawfully exercised. Every case must depend on its own circumstances. It is the emergency that gives the right, and the emergency must be shown to exist, before the taking can be justified. It is not sufficient to show that he exercised an honest judgment, and took the property to promote the public service, he must show by proof, the nature and character of the emergency, such as he had reasonable grounds to believe it to be, and it is then for the jury to say whether it was so pressing, as not to admit of delay ; and the occasion such, according to the information upon which he acted, that private rights, must for the time, give way to the common and public good.

Our duty is to determine under what circumstances private property may be taken from the owner by a military officer in time of war, and the question is, whether the law permits it to be taken to insure the success of an enterprise

against a public enemy which the commanding officer may deem it advisable to undertake. And we think it very clear that the law does not permit it."

We have seen that where private property is taken, the officer is a trespasser unless he can show an emergency. This is our case, for it is not changed by the fact that the defendants acted under the order of their superior officer. The opinion from which we have quoted, goes on to say, " Upon principle, independent of the weight of Judicial decision, it can never be maintained that a military officer can justify himself for doing an unlawful act, by producing the order of his superior. The order may palliate but it cannot justify."

Had the defendants shown an emergency, they would not have been trespassers, but still their Government (had it been successful) would have been bound to make full compensation to the plaintiff. Upon the determination of a war between independent powers, a treaty of peace usually follows, in which they provide for indemnity; each Government paying its own citizens for the wrongful acts of its own officers and soldiers, but upon the suppression of the rebellion, there was no one to treat with, and, of necessity, the citizen must look to the trespassers upon his property, for indemnity. It is their misfortune that there is no Government which can afford relief, by paying for their wrongful acts.

We have examined the act of 1866, commonly known as the "Amnesty Act," and find that while it is very full and comprehensive in granting amnesty and pardon for public wrongs, it is quite restricted when it treats of private wrongs.

The first section enacts that " no persons who may have been in the civil or military service, &c., shall be held to answer on any *indictment,* for any act done in the discharge of any duties imposed on them, purporting to be by law of the State or late Confederate States Government, or by virtue of any *order* emanating from any officer, commissioned

or non-commissioned, of the late Confederate States Government, or any officer, commissioned or non-commissioned, of the United States Government, &c."

The 2nd section enacts that, "In all cases where *indictments* are now pending, &c., if the defendant can show that he was an officer or private in either of the above named organizations at the time, it shall be presumed that he acted under *orders*, until the contrary shall be made to appear."

The 3rd section extends the benefit of the act to all private citizens, who, for the preservation of their lives or property, or for the protection of their families, associated themselves together for the preservation of law and order in their respective counties or districts.

The 4th Section is in the following words, "No person who may have been in the civil or military service of the State or late Confederate States Government, or in the service of the United States Government, in either of the above named organizations, shall be held liable in any civil action for any act done in the discharge of any duties imposed upon him by any *law* or *authority purporting to be a law* of the State or late Confederate States Government."

The power of the Legislature to make a law shielding trespassers upon private property from liability in civil actions, is not now before us; but we are inclined to think that it has no more right to do so than it has to violate the obligation of a contract, or to destroy any other vested right. But as we have said, our case does not present that question, for it will be observed that the words "by virtue of any order emanating from any officer, &c," which we find in sec. 1, which treats of public wrongs, are omitted when we come to sec. 4, which treats of civil injuries. Sec. 4 professes to relieve from liability, only for such acts as were done in the discharge of duties imposed by law, or authority purporting to be a law, of the State or late Confederate States Government. Here there was only an order by parol, not warranted by any law or authority purporting to be a law. *Yost* v. *Stout*, 4 Cold. 205.

The judgment of the Superior Court must be reversed, and judgment entered here upon the verdict returned, by consent.

PER CURIAM. Judgment reversed, &c.