Ex parte WILLMAN.

(District Court, S. D. Ohio, W. D. December 24, 1921.)

No. 3082.

1. **Habeas corpus** ⬳4—**Discretionary power of federal court.**

A District Court is vested with discretionary power to determine whether a petitioner, claiming to be imprisoned by state authority for an act done pursuant to federal law, shall be put to his writ of error to the

highest court of the state, or shall be permitted to have the question determined summarily on writ of habeas corpus.

**2. Post office ⟨⟩4—Regulations of Postmaster General for conduct of department have force of law.**

Under Rev. St. § 396 (Comp. St. § 582), the Postmaster General has power to promulgate regulations generally as to the conduct of the department, and such regulations are controlling, have the force of law, and are judicially noticed.

**3. Municipal corporations ⟨⟩707—Driver of mail truck, conforming to regulations of department, not subject to arrest under state law.**

The driver of a mail truck, on a street which is a post road, *held* not subject to arrest, conviction, and imprisonment because the lights on his truck, which were those prescribed by the regulations of the department, did not conform to the requirements of a state statute.

At Law. On petition of Harry Willman for writ of habeas corpus. Writ granted.

James R. Clark, U. S. Atty., and Thomas H. Morrow, Asst. U. S. Atty., both of Cincinnati, Ohio, and Walter E. Kelly, Asst. Atty. of Post Office Department, of Washington, D. C., for the United States.

Saul Zielonka, City Sol., and Joseph H. Woeste and Chauncey D. Pichel, Municipal Court Prosecutors, all of Cincinnati, Ohio, for city of Cincinnati.

PECK, District Judge. This case is heard upon application for a writ of habeas corpus and upon an agreement that the facts stated may be regarded as the return which would be made should the writ be issued, and that the case may be finally disposed of as upon such return.

The petitioner, Willman, is a mail truck chauffeur in the employ of the Post Office Department of the United States government at Cincinnati. He was arrested by the police officers of the city while driving a government truck carrying the mail, at night, from the post office to the terminal of the Baltimore & Ohio Railroad, over Carlisle avenue, the scheduled route, because the truck, although equipped with oil headlight lamps furnished by the Post Office Department, pursuant to a general order of the Postmaster General prescribing that type as the standard for the use of such vehicles in cities throughout the country, was not fitted out with lamps that would show objects 200 feet ahead of the vehicle and to a width of 10 feet on each side of its path, as required by the law of Ohio approved May 14, 1921 (109 Ohio Laws, 220). Being so charged, he was convicted and sentenced by the municipal court of Cincinnati to pay a fine of $10 and the costs of prosecution, and to stand committed to jail until the same were paid. He declined to pay, and was committed, and now, by this petition in habeas corpus, seeks his release, upon the ground that the act for which he has been imprisoned was committed solely and entirely as an employee and agent of the government, in the performance of his duty in the service, in accordance with the instructions of his superior officers, in pursuance of a law of the United States. R. S. § 753 (U. S. Comp. Stat. 1916, § 1281).

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The District Court is vested with a discretionary power to determine whether one who complains that he is imprisoned by state authority for an act done pursuant to federal law shall be put to his writ of error to the highest court of the state, or be permitted to proceed here by writ of habeas corpus, and to have summarily determined whether he is restrained of his liberty in violation of the Constitution and laws of the United States. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868. Inasmuch as the question here presented concerns, not only the right of the applicant to his liberty, if his detention be unlawful, but the right of the government to operate its mail trucks with its standard headlight equipment, in this and the other cities of the state of Ohio, and as counsel for the government represent that a large expenditure of money would be required to make such changes as would be necessary to conform with the various local regulations in this state and elsewhere, it is thought that the case is one which should be speedily determined, and therefore the petition is entertained.

It is shown by the agreed statement that the petitioner was acting under orders, and it is fairly to be inferred that he had no choice but to drive the truck with the headlights furnished by the department, or resign. It did not lie within his power to alter the equipment specified by the Postmaster General, had he been of inclination and means to do so. Federal authority within its sphere being paramount, the only question is whether or not the Postmaster General's order prescribing the use of the headlights in controversy was a valid exercise thereof.

It is unnecessary to refer to the constitutional right of Congress to establish post offices and post roads, or to the many incidental powers which result by necessary implication. By the Act of March 1, 1884 (23 Stat. 3 [U. S. Comp. Stat. 1916, § 7457]), all public roads and highways, while kept up and maintained as such, are declared to be post routes, and Carlisle avenue, in the city of Cincinnati, was such by force of this statute (Essex v. New England Telegraph Co., 239 U. S. 313, 321, 36 Sup. Ct. 102, 60 L. Ed. 301).

[2] By section 396 of the Revised Statutes (U. S. Comp. Stat. 1916, § 582), it is made the duty of the Postmaster General, among other things, to establish post offices, to instruct persons in the service with reference to their duties, to control according to law the disposal of the moneys and the expenses, and to superintend generally the business, and execute all laws relating to the postal service. As the result of this enactment he has power to promulgate regulations generally as to the conduct of the department, and such regulations are controlling, have the force of laws, and are judicially noticed. Lewis Pub. Co. v. Morgan, 229 U. S. 288, 306, 33 Sup. Ct. 867, 57 L. Ed. 1190; Caha v. United States, 152 U. S. 213, 14 Sup. Ct. 513, 38 L. Ed. 415; United States v. Warfield, 170 Fed. 43, 95 C. C. A. 317, 24 L. R. A. (N. S.) 312, 17 Ann. Cas. 1186; Bruce v. United States, 202 Fed. 98, 120 C. C. A. 370; United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; McKinley v. United States, 249 U. S. 397, 39 Sup. Ct. 324, 63 L. Ed. 668. As to such regulations as the present one, his

discretion is not reviewable. Niel, Moore & Co. v. Ohio, 3 How. 720, 11 L. Ed. 800; Bates & Guild Co. v. Payne, 194 U. S. 106, 24 Sup. Ct. 595, 48 L. Ed. 894.

[3] By the Act of March 1, 1921 (41 Stat. 1152), making appro- priations for the Post Office Department for the fiscal year ending June 30, 1922, there was appropriated for vehicle allowance, the hiring of drivers, the purchase and maintenance of wagons and automobiles, and the operation of screen wagons (such was this truck), and for city delivery and collection services, and kindred specified purposes, the sum of $15,000,000. The Postmaster General, by the provisions above referred to, was charged with the duty, and vested with the power, as to the expenditure of this sum for the purposes aforesaid in the carrying on of the business of the postal establishment according to law. His mandate from Congress was to procure, fit out, and operate the trucks. Necessarily, the details as to the equipment best suited to the transportation of the mails were left to his discretion.

It is, then, to be determined whether, in the exercise of such discre- tion and in the promulgation of the necessary regulations pursuant thereto, he was subordinate to the laws and ordinances of the various states and cities. By Johnson v. Maryland, 254 U. S. 51, 41 Sup. Ct. 16, 65 L. Ed. ——, it is established that the law of a state penalizing one who operates a motor truck on its highways without having ob- tained a license, based on an examination of competency and payment of a fee, cannot constitutionally apply to an employee of the Post Of- fice Department while engaged in driving a government motor truck over a post road in the performance of his official duty. The court say (254 U. S. 57, 41 Sup. Ct. 16, 65 L. Ed. ——) :

"It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon ex- amination that they are competent for a necessary part of them and pay a fee for permission to go on. Such a requirement does not merely touch the government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the government has pronounced sufficient. It is the duty of the department to employ persons competent for their work and that duty it must be presumed has been performed. Keim v. United States, 177 U. S. 290, 293."

It is difficult to distinguish in principle the statute here in question from the one thus decided to be inapplicable to a federal employee. Each is a police regulation of a state, adopted for the safety of its in- habitants. The one has to do with the fitness of the driver, the other with the sufficiency of the equipment; but each rests upon the same basic power of the state, and each would seem to be subject to the same limitation when attempted to be extended over the instrumentalities of the federal government.

"The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission; but does it extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable that it does not." Chief Justice Marshall, in McCulloch v. Maryland, 4 Wheat. at page 429, 4 L. Ed. 579.

In Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699. the Ohio law regulating the serving of oleomargarine in eating houses was held not to apply to the commander of the National Soldiers' Home at Dayton, acting officially.

This case must be distinguished from those in which the driver of a vehicle carrying the mail fails to comply with traffic regulations in instances where no rule of conduct has been prescribed for him by Congress or by the Postmaster General acting under authority of Congress, and from those in which he is himself guilty of negligence. Johnson v. Maryland, supra. The Supreme Court there set apart as inapplicable United States v. Hart, Fed. Cas. No. 15,316, 1 Pet. C. C. 390, in which Mr. Justice Washington decided that a police officer of the city of Philadelphia was not guilty of obstructing the United States mail in arresting the driver of the mail stage for reckless driving, and on another occasion, the stage being placed on runners, for failure to have sleighbells on the horses, and Commonwealth v. Closson, 229 Mass. 329, 118 N. E. 653, L. R. A. 1918C, 939, in which the driver of a mail wagon was held amenable to a traffic regulation requiring him to pass to the right of, and beyond the center of, an intersecting street before turning to the left. Speaking by Mr. Justice Holmes, the court say:

"It very well may be that, when the United States has not spoken, the subjection to local law would extend to general rules that might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets."

Those decisions, therefore, are not apposite to the present case. They apply to unlawful or negligent personal acts of mail carriers, as distinguished from orderly obedience to an established regulation of the Post Office Department. Those persons had no lawful choice but to obey the local regulations. Willman, on the other hand, was confronted with a conflict between the orders of the Post Office Department and the statute of Ohio, and for obeying the former he is imprisoned for violating the latter.

To affirm that the authority of the Postmaster General in carrying out the power conferred upon him by Congress is subordinate to the various state laws would be to say that the federal government is not supreme in the selection of instrumentalities for the carrying of the mail. Such a conclusion is inadmissible, in view of the foregoing authorities. Therefore it must be concluded that the order of the Postmaster General prescribing oil headlights of the type on the truck Willman was driving was a valid exercise of general authority pursuant to law, and that what Willman did in obedience thereto was done pursuant to the laws of the United States, and consequently that he is immune from prosecution by the state for so doing.

It is established that one imprisoned by state authority under such circumstances may be released by this court through the means of a writ of habeas corpus. In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55; Ohio v. Thomas, supra. The writ will issue, and, as it has been stipulated that the agreed statement of facts may stand as and for a return thereon, the petitioner will be discharged from custody.