NORMAN J. NEU *vs.* JOSEPH F. McCARTHY.

Norfolk.    December 3, 1940. — April 17, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Negligence,* In use of way, Motor vehicle, Contributory, Military order, Violation of law. *Law of the Road. Motor Vehicle,* Operation. *Evidence,* Presumptions and burden of proof, Relevancy and materiality. *Military Law.*

A rule of the department of public works respecting stopping at the display of a red light at an intersection of ways was binding upon the commander of a convoy of United States Army trucks in time of peace and in the absence of any emergency and of a controlling Federal law to the contrary.

Obedience by a private in the United States Army operating a motor truck to an illegal order given by his commanding officer that he drive through an intersection of ways regardless of what the traffic lights directed, would be a justification for such conduct because it could not be said that the order was so palpably unlawful that a reasonable person in the position of the operator would perceive its unlawful quality.

Disregard by a private in the United States Army, operating a motor truck, of a traffic rule of the department of public works in justifiable obedience to an illegal order of his commanding officer would not in itself be evidence of negligence or a bar to recovery for injuries sustained in a collision caused by negligence of the operator of another vehicle.

Justification of a disregard of a traffic light by a private in the United States Army by reason of an illegal order of his commanding officer would not excuse negligence on his part in other particulars than in not heeding the light.

A soldier of the United States Army operating a motor truck, plaintiff in an action for personal injuries sustained in a collision, had the burden of proving justification in disobeying a traffic rule of the department of public works because of obedience to his commanding officer; proof of violation of the rule was upon the defendant.

At the trial of an action by a private in the United States Army for personal injuries sustained in a collision between an army truck, which he was driving through an intersection of ways in violation of a rule of the department of public works, and an automobile operated by a private citizen, evidence that the plaintiff's conduct was in violation of army regulations and the "Basic Field Manual" of the army properly was excluded.

TORT. Writ in the District Court of Northern Norfolk dated January 3, 1939.

On removal to the Superior Court, the case was tried before *F. T. Hammond,* J.

*D. H. Fulton,* for the plaintiff.

*R. J. Coffin,* for the defendant.

QUA, J.   The plaintiff was injured on September 9, 1938, at about 2:30 P.M. by a collision between "a United States Army truck" operated by him and an automobile operated by the defendant.   The accident occurred in Dedham at the intersection of the "Circumferential Highway," known as "Route 128," which runs north and south, and a county way known as "Route 109," which runs east and west. The plaintiff was travelling north on "Route 128," and the defendant was travelling west on "Route 109."   Traffic lights had been installed at the intersection by the proper authorities.   In answer to special questions the jury found that the accident was caused by the negligence of both parties, and that the plaintiff drove his truck into the intersection "in disobedience of the rule [of the department of public works] directing traffic on State highways to stop outside of the intersection while the red light is displayed." Both parties have filed exceptions.

There was evidence of the conduct of the parties that required the submission to the jury of the issues of due care or negligence of both plaintiff and defendant.   In this respect the case is not materially different from many other cases of street crossing collisions, and nothing would be gained by a recital of the evidence.   The principal question is whether the plaintiff, a private in the United States Army, was under a legal obligation to obey the traffic lights. On the record before us this is important for its bearing upon the issue of contributory negligence which the jury determined adversely to the plaintiff.   See *Herman* v. *Sladofsky,* 301 Mass. 534, 538; *VanDresser* v. *Firlings,* 305 Mass. 51, 55, 56.

The truck driven by the plaintiff was seventh or eighth in a line or convoy of army trucks commanded by a Captain Boettcher, who rode in a beach wagon at the head of the line.   Earlier in the day the convoy had taken a load of baggage from Fort Devens in Ayer to Fort Adams in

Newport, Rhode Island. At the time of the accident it was returning to Fort Devens. There was evidence that before starting in the morning Captain Boettcher had given orders to "keep a distance on the highway of one telegraph pole," and if the first truck went through an intersection to keep going, to "follow through regardless," to keep up with the convoy; and that he had said to the men that any driver who got lost would be tried by court martial. The plaintiff himself testified that Captain Boettcher told him that if the head of the convoy went through red lights "we were to go through, too"; that under Captain Boettcher's orders the plaintiff was intentionally disobeying the rule that "State and local highway regulations will be carefully observed"; and that he was "just obeying Captain Boettcher's orders. That is his first rule as a soldier." Later he testified that he did not know the color of the lights at the time. There was other and contradictory evidence that the orders were to observe all civilian traffic rules and to stop for red lights, unless otherwise directed by police.

The State, as the original and general sovereign, establishes and maintains the public ways and regulates their use. The Federal government may use them for all purposes necessary or reasonably incidental to the carrying out of the powers delegated to it and is not to be thwarted or hampered in the execution of those powers by State regulation. On the other hand the general control remains in the State and may be exercised by it to secure safe and orderly use of the ways for the benefit of all persons and agencies in so far as such control can be exercised without substantial interference with any function of the Federal government. In accordance with these principles this court decided in *Commonwealth* v. *Closson*, 229 Mass. 329, that the driver of a mail wagon employed by the United States was amenable to regulations requiring him to drive on the right hand side of roads and regulating the mode of turning at corners. This case was cited, seemingly with approval, in *Johnson* v. *Maryland*, 254 U. S. 51. A similar decision was made as to speed limits in *Hall* v. *Commonwealth*, 129

Va. 738. Compare *Ex parte Willman*, 277 Fed. 819. See *United States* v. *Hart*, Pet. C. C. 390.

The army is an instrumentality of the United States. Its use of highways within the boundaries of a State would seem to be governed by the same general principles as govern their use by other instrumentalities of the United States, although in the application of those principles proper allowance must of course be made for the special and peculiar necessities and urgencies which at times, but not always, confront a military force in the performance of its duties. A person who enters military service is not thereby relieved from his obligation to observe the law of the jurisdiction in which he finds himself. Speaking generally, he is liable for his torts as are other persons. *Little* v. *Barreme*, 2 Cranch, 170, 171. *Mitchell* v. *Harmony*, 13 How. 115. *Bates* v. *Clark*, 95 U. S. 204. *Franks* v. *Smith*, 142 Ky. 232. *Bishop* v. *Vandercook*, 228 Mich. 299. *State* v. *Sparks*, 27 Texas, 627. In this country the special powers and privileges of the military, both State and Federal, such as the power of arrest of persons and the power of impressment of private (nonenemy) property have been carefully limited, even in time of public disorder or actual war, to situations of immediate and imperative necessity, and the civil courts have not hesitated to determine for themselves in each instance whether or not such necessity existed. *Ela* v. *Smith*, 5 Gray, 121, 140, 141. *Brigham* v. *Edmands*, 7 Gray, 359. *Tyler* v. *Pomeroy*, 8 Allen, 480, 505. *Luther* v. *Borden*, 7 How. 1, 45, 46. *Mitchell* v. *Harmony*, 13 How. 115, 134, 135. *Ford* v. *Surget*, 97 U. S. 594. *Sterling* v. *Constantin*, 287 U. S. 378, 401. *Ferguson* v. *Loar*, 5 Bush. 689. *Dills* v. *Hatcher*, 6 Bush. 606. *Bryan* v. *Walker*, 64 N. C. 141. *Koonce* v. *Davis*, 72 N. C. 218. In order to maintain the traditional and proper relation between the civil and military authorities it is necessary that the courts continue to perform this duty. See *Ex parte Milligan*, 4 Wall. 2, 124, 125.

The event out of which this action arises occurred in time of peace. There was no public disorder. No belligerent operations of any kind were in progress. There was no need

of haste. There was no emergency. We can entertain no doubt that private persons in the trucking business could have carried thirteen truck loads of baggage from Ayer to Newport and could have returned to Ayer, whether proceeding by "convoy" or otherwise, without finding themselves hampered or seriously annoyed by obeying the traffic lights on the journey. There is no reason to believe that the army could not have done as well. Possibly the journey had aspects of military training in addition to the immediately practical purpose of conveying the baggage, and perhaps from the standpoint of military training there may be advantages in running in convoys and in keeping those convoys intact and unbroken by the stopping of portions of them as the lights change, but the case discloses nothing to convince us that there is any difficulty which cannot be overcome by reasonable dispositions or which requires that the army submit the community to the serious peril to life and property almost certain to result from disregard of the signals relied upon by all other persons using the highways. The lack of any justifying military necessity distinguishes this case from *State* v. *Burton*, 41 R. I. 303, where it was held that a "dispatch driver" of the navy who, in time of war, had been ordered to proceed "with all possible dispatch" was justified in breaking a speed law.

We are not in this case called upon to consider the effect of any Federal law or regulation made in pursuance of law authorizing or requiring disregard of the rules established by the State. No such law has been brought to our attention, and no such regulation has been shown. This distinguishes the case from cases like *Ex parte Willman*, 277 Fed. 819.

One statute of this Commonwealth should be mentioned. G. L. (Ter. Ed.) c. 33, § 58, in force at the time of the accident (see now § 47 of the substituted c. 33 inserted by St. 1939, c. 425, § 1), provided that "United States forces or troops, and any part of the militia parading, or performing any duty, according to law, shall have the right of way in any street or highway through which they may pass; provided, that the carriage of the United States

mails, the legitimate functions of the police, and the progress and operation of fire engines and fire departments shall not be interfered with thereby." This section was originally enacted as St. 1878, c. 265, § 119. Without pausing to construe or to determine the application of the words "performing any duty, according to law," we are satisfied that this section was intended to establish the prior right to use and occupy the streets and highways and particular portions of them as between parties each of whom would otherwise have the right to use and occupy them. In such circumstances civilian travellers are to give way. But it was not intended to confer upon anyone a right to proceed against the absolute prohibition of some other law. See *Widronak* v. *Lord,* 269 Mass. 238, 241.

In our opinion it results from what has been said that the rule of the department of public works was binding upon the commander of the convoy and was binding upon the plaintiff in the absence of any order inconsistent with it which the plaintiff was bound to obey, and that if Captain Boettcher did give an order inconsistent with that rule his order was an illegal one.

But since the jury could find on the evidence that the illegal order was given, it becomes necessary to inquire as to its effect (if given) upon the plaintiff. The plaintiff was not in the position of an agent or employee who has received an illegal order from his principal or employer. He was a soldier. Even in time of peace obedience to orders is the first duty of a soldier. He is not expected to argue points of law with his superior officers. Failure of instant obedience leads to military punishment, which may be severe. Recognition of the peculiar necessity of discipline in the military service and of the position in which the subordinate may find himself through no fault of his own in the event that commands of his superiors clash with the civil authority has led courts in well considered cases to regard obedience to a military order as a justification for conduct which would otherwise give rise to civil or criminal liability, unless the order is so palpably unlawful that a reasonable man in the position of the person obeying it would perceive

its unlawful quality. *United States* v. *Clark*, 31 Fed. 710,
717. *McCall* v. *McDowell*, 1 Abb. U. S. 212. *Despan* v.
*Olney*, 1 Curt. C. C. 306. *Trammell* v. *Bassett*, 24 Ark.
499, 504, 505. *Franks* v. *Smith*, 142 Ky. 232, 250. *Herlihy*
v. *Donohue*, 52 Mont. 601, 611, 612. *Commonwealth* v.
*Shortall*, 206 Penn. St. 165, 175–178. *Riggs* v. *State*, 3 Coldw.
85. Harper on Torts, § 59. See *Ela* v. *Smith*, 5 Gray, 121,
141; *State* v. *Burton*, 41 R. I. 303, 306. The American
Law Institute has adopted this rule as a rule of privilege in
actions against a soldier for alleged assault or false impris-
onment. Restatement: Torts, § 146. By § 24 of the sub-
stituted c. 33, inserted in the General Laws by St. 1939,
c. 425, § 1, the same principle is adopted as to the lia-
bility of members of the militia when called into service
in cases of invasion, insurrection, tumult, or public catas-
trophe for injuries caused by them to persons or property.
An analogy may be found in the exemption from liability
of an officer of the court in serving a process regular on
its face. See *David* v. *Larochelle*, 296 Mass. 302, 304. It
is true that this rule has by no means been recognized and
enforced in all the cases to which it might have been prop-
erly applicable, but we think that it is adapted to meet
the realities confronting a soldier in his relations to civil-
ians and that it should be accepted as sound.

The rule applies to this case, if Captain Boettcher gave
the order in question. An order to keep the convoy to-
gether even if that involved continuing in the face of a red
light, although illegal, cannot, we think, under circumstances
not here in dispute, be deemed palpably and obviously
illegal to a private soldier in the position of the plain-
tiff. If the order was given we think it furnished a justi-
fication to the plaintiff for passing the red light, and that
under those circumstances his mere act in proceeding while
the light was red instead of waiting for it to turn green
would not be in itself evidence of negligence or a bar to
recovery. It does not follow, however, that the plaintiff
would be excused by this order from the consequences of
negligence in any other respect, as for example failure to
slow down or stop if he ought to have foreseen that there

was danger of a collision. An order to disregard the lights would not be equivalent to an order to drive recklessly or negligently with respect to conditions other than lights and could furnish no justification to the plaintiff beyond its scope. And inasmuch as the justification is in the nature of confession and avoidance, the burden of proving that he acted in accordance with an order of an officer whom he was bound to obey rested upon the plaintiff. *Powers* v. *Russell*, 13 Pick. 69, 76, 77. *Hughes* v. *Williams*, 229 Mass. 467, 470. *Smith* v. *Hill*, 232 Mass. 188. But the burden of proving that the plaintiff did pass through the red light was upon the defendant. *Conroy* v. *Mather*, 217 Mass. 91,. 94, 95. *Broughton* v. *Boston & Maine Railroad*, 290 Mass. 80, 82. *Beauvais* v. *Springfield Institution for Savings*, 303 Mass. 136, 144.

Since the instructions to the jury as to the effect of an order by Captain Boettcher were not in accord with the views here expressed and may have influenced the jury in making the special finding that the plaintiff was contributorily negligent on which the directed verdict for the defendant rests, the plaintiff's exceptions must be sustained.

There was no error in refusing the defendant's requests for rulings to the effect that if the plaintiff violated any written rule of the army regarding traffic lights, or any rules of the army which were posted or of which he had received a copy, which rules regulated his conduct at traffic lights, "this is evidence of negligence and if it contributed to cause his injury he cannot recover," or in striking out the army regulations and the "Basic Field Manual," portions of which had previously been introduced in evidence. The defendant's interest in these regulations springs from clauses contained in them requiring, in general, observance of State and local highway rules. There is nothing in them purporting to authorize drivers to violate those rules. The evidence leaves it doubtful whether the regulations were intended directly to bind the individual soldier and whether they were any more than directions in the nature of general orders to officers who were expected to carry them into execution by giving in turn proper orders to the enlisted

men under their command. At any rate these regulations added nothing to the law in force at the time and place of the accident, by which law this case must be governed. The Commonwealth could not have prosecuted the plaintiff for any breach of the army regulations or of the manual. Such breach would have been a matter for military discipline only. The regulations and the manual did not affect or purport to affect the rights and duties of the plaintiff as to persons not in the service. They are not like the rules to secure safety established by a railroad or a manufacturing corporation, for example, breach of which by an employee is evidence of negligence of the corporation in an action against it on the theory that by establishing the rules the corporation has, in effect, admitted that due care requires their observance. *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476, 480. Wigmore on Evidence (3d ed.) § 282. On the other hand, there was nothing in the regulations or in the manual relieving the plaintiff as an enlisted man from his duty to obey any specific order of Captain Boettcher. We think the army regulations and the manual were incompetent.

Exceptions raising questions not specifically discussed in this opinion depend upon the wording of particular requests for rulings and upon principles of law exemplified in many decisions. These questions are not likely to arise in the same form at another trial. It would not be profitable to examine them in detail now.

> *Plaintiff's exceptions sustained.*
> *Defendant's exceptions overruled.*[1]

---

[1] See now St. 1941, c. 318, enacted as an emergency law and approved on May 26, 1941. — REPORTER.