STATE ex inf. John C. DANFORTH,
Attorney General, Appellant,

v.

The READER'S DIGEST ASSOCIATION,
INC., Respondent.

No. 58433.

Supreme Court of Missouri,
En Banc.

Sept. 8, 1975.

**356**

John C. Danforth, Atty. Gen., Harvey M. Tettlebaum, Asst. Atty. Gen., Jefferson City, for appellant.

Joseph E. Stevens, Jr., William C. Hopkins, II, Kansas City, for respondent; Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, William Barnabas McHenry, New York City, of counsel.

MORGAN, Judge.

The Attorney General of Missouri filed, in the trial court, an information in the nature of quo warranto wherein it was alleged that The Reader's Digest Association, Inc., was conducting a promotion for the sale of magazines and various items of merchandise in violation of the lottery laws and public policy of the state of Missouri—Article III, § 39(9) of the 1945 Missouri Constitution and §§ 563.430 and 563.440, RSMo 1969—and therein prayed that respondent "be ousted and excluded from exercising all privileges and rights granted it as a foreign corporation transacting business in this state and . . . fined an amount equal to its gross receipts attributable to any advertising . . . using the Reader's Digest Ninth Annual Sweepstakes." Service of process was effected under § 506.500, RSMo 1969, commonly referred to as the long-arm statute. Respondent sought to remove the controversy to the U.S. District Court for the Western District of Missouri, but the cause was remanded as one not arising under federal law or the Constitution of the United States. (Civil Action No. 19262–2, Memorandum and Order by Judge Collinson.) Respondent then filed a motion to quash service of process premised on the trial court's lack of jurisdiction over the ·person of respondent and for dismissal for lack of jurisdiction over the subject matter. After the filing of exhaustive suggestions and oral arguments by the parties, the trial court found that the (due process) jurisdictional requirements of the long-arm statute were satisfied, but the motion to dismiss was sustained for lack of jurisdiction over the subject matter on the theory that the state lottery laws conflict with Art. 1, § 8, Clause 7 (postal powers) of the U.S. Constitution and are unconstitutional as applied to users of the U.S. Mail because "respondent is subject only to the Federal Lottery Statutes, 18 U.S.C. § 1302, and regulations promulgated by the U.S. Postal Service thereunder."[1] The state has appealed from the final order of dismissal. Jurisdiction to resolve federal and state constitutional questions lies in this court. Art. V, § 3, 1945 Missouri Constitution.

In late 1970 and early 1971, respondent mailed or caused to be mailed into Missouri solicitations for magazine subscriptions and

---

1. The conclusion noted was premised, in part, on the following portion of the judgment entry: ". . . 39 USC Sec. 3001–3010 constitute a scheme of Federal regulations over the content of the U.S. Mail which precludes state regulation of mailability. In the circumstances present in this case, it is a physical impossibility for respondent to comply with both federal and state regulation of lotteries in the use of the U.S. Mail * * * In enacting 18 USC Sec. 1302, dealing with lotteries and in empowering the Postal Service and the Department of Justice to regulate the mails and enforce the Federal Lottery laws, Congress expressly dealt with the subject of lotteries in the mail and thereby exclusively preempted the field of regulating the mailing of lotteries and lottery material * * * Article III, Sec. 39(9) of the Missouri Constitution of 1945 and Secs. 563.430 and 563.440 RSMo as applied to respondent under the circumstances of this case are unconstitutional under Art. I, Sec. 8, Clause 7 of the Constitution of the United States."

purchase orders for numerous items. Receipt of the same entitled the recipient to participate in respondent's "Ninth Annual $400,000. Sweepstakes."[2] Prior to the mailing, respondent sought and obtained from the Assistant General Counsel of the Mailability Division, U.S. Postal Department, an advisory ruling that use of the mails to distribute such solicitations and receive responses therefrom would not violate federal statutes prohibiting the use of the mails in the conduct of a lottery or gift enterprise. Counsel for the Mailability Division concluded that there was no violation because the necessary element of "consideration" was lacking although the elements of "chance" and "prize" were obviously present; and, thus declared that the department had "no standing to initiate action under federal laws."

Article III, § 39(9) of this state's constitution declares that "[t]he general assembly shall not have power . . . [t]o authorize lotteries or gift enterprises for any purpose, and shall enact laws to prohibit the sale of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery." Sections 563.430 and 563.440, RSMo 1969, adopted in apparent compliance with the constitutional mandate, outlaw lotteries and the promotion thereof as felonious offenses and prescribe penalties for violations. The most recent and presently controlling interpretation of such provisions may be found in *Mobil Oil Corporation v. Danforth*, 455 S.W.2d 505 (Mo. banc 1970).

In the present posture of this case, however, we are not called on to decide whether or not there has been a substantive violation of the laws of this state. Since the appeal is from an "order of dismissal," we assume that respondent's promotional activity does constitute a proscribed lottery in the state of Missouri.

Thus, the underlying question is whether or not this state can enforce its lottery laws against respondent. For the answer to be in the affirmative, it must be found that the trial court had jurisdiction over both the "person" of respondent and the "subject matter" of the action. The parties, while taking opposing positions on each of the issues, have in both suggestions of record and formal briefs reviewed extensively historical precedents and legal writings which have been helpful; but, due to the number thereof, it would be inappropriate in an opinion to seek to establish or detail the possible relevance of each—most all of which deal with "preemption" under the "commerce clause" of the U.S. Constitution.

The first issue is whether this state can constitutionally assert *in personam* jurisdiction over respondent in view of its contacts within the state, which allegedly have been made without the fixed presence of offices or officers in Missouri. This court established sufficient standards in *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889 (banc 1970), to resolve the issue. Therein it was held, l.c. 892: "In concluding our effort to determine the legislative in-

---

2. The first mailing was an announcement that a named corporation had just completed drawing the winning numbers for the new sweepstakes. The second mailing was a booklet listing the recipient's "Six Lucky Numbers" and describing the prizes to be awarded. An "official reply envelope" was also included. The instructions advised the recipient that by returning the booklet in the official reply envelope he had a chance to win one of the described prizes. Although it was suggested that there was no record of the number of recipients living in Missouri, the record would indicate that there were thousands. Substantial prizes were offered in the "sweepstakes contest," including but not limited to $2,000. a month for a year or $100. a month for life, $25,000. in cash, prizes worth $25,000., fifty new automobiles, seventy-five television sets, four hundred stereo 8-tape players, five hundred color camera outfits and a large number of steak knife sets. Unclaimed prizes would be awarded by a supplemental drawing limited to sweepstakes' numbers previously returned. Reply forms provided the opportunity to forward a magazine subscription or purchase certain merchandise. There is a factual dispute between the parties as to whether or not certain reply forms were designed to require a recipient to reject affirmatively a subscription or order while returning the same for the chance of being a winner.

tent of the General Assembly of Missouri, we are convinced that the ultimate objective was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

"[1, 2] What precise federal constitutional limitations there presently may be on the application of this jurisdictional concept rests in the interpretation placed thereon by the Supreme Court of the United States. Since *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565, this question has been the subject of innumerable judicial decisions and exhaustive academic writings, but ‘* * * just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations.' *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 200, 2 L.Ed.2d 223. In *McGee* (loc. cit. 222, 78 S.Ct. 200) the court recognized that, 'Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents.' More specifically, ‘* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. See *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283."

Later consideration of the question may be found in *State ex rel. Apco Oil Corp. v. Turpin,* 490 S.W.2d 400 (Mo.App.1973). See also *American Hoechst Corp. v. Bandy Laboratories, Inc.,* 332 F.Supp. 241 (W.D.Mo. 1970); *Fulton v. Chicago, Rock Island and Pacific Railroad Co.,* 481 F.2d 326 (8th Cir. 1973), cert. denied, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) and 27 A.L.R.3d 397.

The trial court ruled that "[t]he activity of the respondent of which complaint is made in this action establishes sufficient minimum contact with the State of Missouri to satisfy the jurisdictional requirements of § 506.500, RSMo 1969," which reads, in part: "Any corporation, who . . . does any of the acts enumerated in this section, thereby submits such . . . corporation . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: The transaction of any business within this state; The making of any contract within this state; * * *" Related sections detail the manner in which service of process must be made.

■ We think it sufficient to state that we believe the promotional activity engaged in by respondent in Missouri to sell magazines and various items of merchandise to thousands of persons constitutes "the transaction of any business" within the meaning of the statute. This is not a case involving minimal contacts on a sporadic basis but a continuous business scheme involving potential obligations of citizens of this state. As the court said in *Reader's Digest Ass'n v. State ex rel. Conner,* 251 So.2d 552, at 556 (Fla.App., First Dist. 1971): "We are not concerned here . . with 'the mere mailing of magazines into Florida', nor are we concerned with a single act on the part of defendant. We are concerned with Reader's Digest invading the offices and homes of more than 10,000 Florida citizens and, at this stage of the pleadings, urging them to participate in an alleged lottery and purchase various goods and merchandise, such activities allegedly being contrary to the criminal and civil laws of Florida."

The factual situation presented falls within the scope of acceptable due process concepts as not only enunciated by this court but, more importantly, by the Supreme Court of the United States. The issue is resolved against respondent.

The second issue involves "subject matter" jurisdiction. It can not be disputed but that the lottery laws of Missouri prohibit lotteries of all kinds and the advertisement thereof. Although not expressly referred to, circulation by mail falls within the generality and universal reach of the state's prohibitions against such activity. Respondent concedes as much, but then submits that the federal government has occupied the field of mailability of lottery material and that regulation thereof has been *preempted* to the exclusion of state action. The contention is bottomed on reasoning which can be outlined fairly.

"Congress, under its power to establish post offices and post roads, has the right, within constitutional limitations, to determine what may be carried in the mails, and what may be excluded therefrom." 62 Am. Jur.2d 22, Post Office § 32, fn. 20, citing *Public Clearing House v. Coyne*, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092 (1904); *Re Rapier*, 143 U.S. 110, 12 S.Ct. 374, 36 L.Ed. 93 (1892); *Ex Parte Jackson*, 96 U.S. 727, 24 L.Ed. 877 (1877); *McCrossen v. United States*, 339 F.2d 810 (10th Cir. 1965), and 11 A.L.R.3d 1268.

■ 18 U.S.C. § 1302, the Federal Lottery Law, prohibits lotteries of all kinds advertised by way of material deposited in, sent or delivered by mail, and penalizes violators by a fine of not more than $1000. or imprisonment for not more than two years, or both, and imprisonment not more than five years for any subsequent offense. 39 U.S.C. § 3001(a) provides that matter, the deposit of which in the mails is punishable under § 1302, is nonmailable. The Postal Service has power and is directed by 39 U.S.C. § 401 to prescribe rules and regulations to accomplish the objectives of Title 39. Such regulations and the rulings properly promulgated thereunder are controlling and have the force of law. *Ex parte Willman*, 277 F. 819 (S.D.Ohio 1921); *Spiegel, May, Stern Co. v. Waterman*, 131 Me. 342, 163 A. 105 (1932). Other cases involving the Treasury Department and other departments of the federal government

hold that federal administrative rulings insofar as they are consistent with statutory powers delegated to department heads, are "Laws of the United States" having the force and effect of law, and by virtue of the Supremacy Clause of the Constitution of the United States become the supreme law of the land. *Yiatchos v. Yiatchos*, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964); *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Hood & Sons v. Du Mond*, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949); *Campbell v. Hussey* 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961); *Catholic Med. Center of Brooklyn & Queens, Inc. v. Rockefeller*, 305 F.Supp. 1268 (E.D.N.Y.1969); *Marino v. Town of Ramapo*, 68 Misc.2d 44, 326 N.Y.S.2d 162, 180[21] (1971); *Ervin v. Conn.*, 225 N.C. 267, 34 S.E.2d 402 (1945); *Harvey v. Rackliffe*, 141 Me. 169, 41 A.2d 455, 161 A.L.R. 296 (1945); *In re Cochran's Estate*, 398 Pa. 506, 159 A.2d 514 (1960); *Parkinson v. Wood*, 320 Mich. 143, 30 N.W.2d 813 (1948). Any state law in conflict with such federal regulations must yield to the controlling federal regulations. *Free v. Bland*, *Yiatchos v. Yiatchos*, and *Marino v. Town of Ramapo*, supra; *Hoeppner v. Slagle*, 141 Ind.App. 622, 231 N.E.2d 51 (1967); *In re Estate of Freedland*, 38 Mich.App. 592, 197 N.W.2d 143, 145 (1972). "Since the authority of the United States is supreme on all subjects which the Constitution has committed to it * * * an exercise of federal power generally prevails over state legislation or action, and, if the laws or public policy of the states come into conflict with the federal statutes, or with administrative regulations properly adopted under federal law, the state law must yield." 81 C.J.S. States § 7aa, pp. 879–881. From all of which, the respondent draws the conclusion heretofore noted.

The Postal Service has participated in this litigation and we quote a portion of its "Memorandum" filed in the trial court, to-wit: ". . . the Postal Service takes no position concerning the merits of this ac-

tion; the authority of the State of Missouri to enact legislation defining and regulating lotteries and gift enterprises; or, the interpretation of those statutes by the parties herein. Our exclusive interest in this proceeding is the avoidance of potential interference with the United States mails * * The interests of the Postal Service at the present stage of the proceedings are in the continued maintenance of a national postal system, free from State regulation or control. These interests would be endangered, should this proceeding involve any attempt by the State of Missouri to determine what may lawfully be carried in and delivered by the United States Postal Service within the State of Missouri or to interfere with the movement of the United States mail within the State of Missouri. Such action would, we suggest, violate the constitution and laws of the United States * * * In our opinion, 39 U.S.C. §§ 3001–3010 constitute a scheme of Federal regulation over the content of the United States mail which precludes state regulation of mailability * * [W]e believe that the authority to determine the mailability of matter—including matter relating to lotteries, sweepstakes, and gift enterprises—has been pre-empted by the United States."

The state does not challenge the resulting legal consequences if the federal government, in fact, has preempted control over the existing factual situation presented, but it does submit that "preemption" as such is not involved. It is argued that "[e]very decided case wherein a State or Federal Court has found preemption under the 'Postal Powers Clause' of the United States Constitution involved the *direct, physical* interference by a state authority with the personnel or facilities of the United States Postal Service." Representative cases cited

are *Johnson v. Maryland*, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920), and *Ex parte Willman*, supra, buttressed by *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and its companion case of *Alberts v. California*, both of which were decided in one opinion. Alberts conducted a mail-order business from Los Angeles, California. He was convicted under state law for keeping obscene literature for sale and for publishing an obscene advertisement of the same. Alberts' contention and the court's disposition of it appear in the following excerpt from the case, 354 U.S. at 493–494, 77 S.Ct. at 1314: "Alberts argues that because his was a mail-order business, the California statute is repugnant to Art. I, § 8, cl. 7, under which the Congress allegedly pre-empted the regulatory field by enacting the federal obscenity statute punishing the mailing or advertising by mail of obscene material. The federal statute deals only with actual mailing; it does not eliminate the power of the state to punish 'keeping for sale' or 'advertising' obscene material. The state statute in no way imposes a burden or interferes with the federal postal functions. . . . The decided cases which indicate the limits of state regulatory power in relation to the federal mail service involve situations where state regulation involved a direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions. . . ." [3] The federal statute in issue in the Roth case, 18 U.S.C. § 1461, provided for the imprisonment and fining of anyone who "knowingly deposits for mailing or delivery [obscene material] . . . or knowingly takes the same from the mails for the purpose of circulating or disposing thereof." It is submitted by the

---

**3.** For some hoped-for simplicity in reading, we do note at this point that respondent counters with the argument that the Supreme Court of the United States has looked also to the *effect* of state action upon the accomplishment of the purposes and objectives underlying the federal power and that actual physical interference need not be

present. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), is cited in this connection as are *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), and *New York Broadcasters Ass'n v. United States*, 414 F.2d 990, 997 (2nd Cir. 1969).

state that 18 U.S.C. § 1302 provides for the punishment of one who "knowingly deposits in the mail, or sends or delivers by mail" lottery material; and, according to the rationale of the Roth case, it deals only with actual mailing and would not eliminate the power of the state to punish a party for conducting or advertising a lottery or soliciting participation in a lottery scheme. It would appear that the Roth case is the most recent U. S. Supreme Court pronouncement on the question of federal preemption under the postal powers clause of the Constitution of the United States.

In light of the arguments herein noted, we seek to resolve the issue. In this task, we have the guidance of a nearly identical case involving the respondent—*State of Washington v. Reader's Digest Association, Inc.*, 81 Wash.2d 259, 501 P.2d 290 (banc 1972), appeal dismissed, 411 U.S. 945, 93 S.Ct. 1927, 36 L.Ed.2d 406 (1973). In that case the Attorney General of Washington brought suit against respondent seeking a declaratory judgment that the latter's sweepstakes violated the state's Consumer Protection Act, an injunction against conducting or advertising the sweepstakes in Washington or accepting sweepstakes entries from that state and an order directing Reader's Digest to pay a civil penalty for each advertisement of the sweepstakes disseminated after a certain date. In that case, as here, respondent had "no agents, employees, offices or other property within [the] jurisdiction. Its Sweepstakes promotion is conducted through the mails." 501 P.2d at 302. Respondent filed a pre-trial motion to dismiss on the ground of lack of subject-matter jurisdiction which was rejected. At the end of the trial, however, the court did dismiss the complaint and the state appealed. Respondent cross-appealed the denial of its pre-trial motion to dismiss asserting that the field which the state was seeking to regulate had been preempted by the U. S. Postal Department. The Supreme Court of Washington held that the sweepstakes in issue was a lottery and therefore *per se* an unfair trade practice and the

court disposed of the preemption contention as follows: "In its cross-appeal respondent argues that federal statutory control over lotteries by mail pre-empts the regulation of mail order lotteries by states. This contention is without merit. While it is true the state is without power to regulate the mail, it is not powerless to prevent respondent from using unfair trade practices within its borders. *Roth v. United States,* 354 U.S. 476, 493–494, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The state cannot enjoin the mails, but it can enjoin respondent from conducting the Sweepstakes within its borders, subjecting respondent to the penalties of the Consumer Protection Act for refusal to comply." 501 P.2d at 303. As regards the U. S. Supreme Court's disposition of the case, the entry in the U. S. Reports reads: "Appeal . . . dismissed for want of substantial federal question." 411 U.S. 945, 93 S.Ct. 1927, 36 L.Ed.2d 406 (1973).

Respondent seeks to distinguish the Washington case, which obviously involved the identical activity herein challenged, for the reason there was no "prior approval of mailability" by the postal department—and, thus, the reported opinion does not reflect a direct conflict between the exercise of federal and state power. We do not believe the case is distinguishable. As is conceded by the state, a determination of "mailability" under existing law of long standing is solely for the postal department. It *alone* has the power to make such a determination. However, the fundamental issue is not one of "mailability" but one of "preemption." If indeed the federal government has preempted the field of "regulating lotteries by mail," then it would make no difference whether the postal department had or had not issued a prior mailability certificate because a state could not move into the field in any event.

Analogous in principle only is the holding of the Wisconsin Supreme Court in *Ministers Life and Casualty Union v. Haase,* 30 Wis.2d 339, 141 N.W.2d 287 (1966), a case which decided the applicability of a portion

of Wisconsin's insurance law to out-of-state mail-order insurance companies whose contact with Wisconsin was through the U. S. Mails. The plaintiff insurance company, which had no office, officer, bank account or real estate in Wisconsin, brought a declaratory judgment action contending that the state had no jurisdiction to tax or regulate its mail-order insurance · business because the state statute authorizing the same violated the postal clause of the U. S. Constitution (and four other clauses as well). The Wisconsin Supreme Court rejected that contention as follows: "Ministers' final attack on the statute as a violation of the postal clause, sec. 8, art. 1, U.S.Const., is without merit. The Wisconsin section does not interfere with the use of the mail, does not prohibit Ministers from using the mail and more importantly does not interfere with congress' exclusive power to determine what shall be carried and what shall be excluded in the mails. The postal clause is not talismanic and does not immunize Ministers from regulation." 141 N.W.2d at 297.

The two cases, last noted, would tend to sustain the state's theory, i. e., that regulation of one who uses the mail is not the same as regulation of the mail. Although, we believe such a concise and abbreviated approach has merit, it must be evaluated in light of the most relevant law as declared by the Supreme Court of the United States, which, in *Goldstein v. California*, 412 U.S. 546, at 561, 93 S.Ct. 2303, at 2312, 37 L.Ed.2d 163, said: "We must proceed to determine whether the challenged state statute is void under the Supremacy Clause. No single formula can capture the complexities of this determination; the conflicts which may develop between state and federal action are as varied as the fields to which congressional action may apply." Resolution of such potential conflicts may be made under the guidelines set out in *Rice v. Santa Fe Elevator*, 331 U.S. 218 at 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), to-wit: "The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. *Pennsylvania R. Co. v. Public Service Comm'n*, 250 U.S. 566, 569, 40 S.Ct. 36, 37, 64 L.Ed. 1142; *Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. *Southern R. Co. v. Railroad Commission*, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661; *Charleston v. W. C. R. Co. v. Varnville Co.*, 237 U.S. 597, 35 S.Ct. 715, 59 L.Ed. 1137; *New York Central R. Co. v. Winfield*, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045; *Napier v. Atlantic Coast Line R. Co., supra* [272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432]. Or the state policy may produce a result inconsistent with the objective of the federal statute. *Hill v. Florida*, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782."

In this case, the state seeks relief which actually would only require respondent alone to delete from its mailing lists those recipients of the alleged lottery material who reside in Missouri. Such a task should not be difficult in this age of computers. What effect, if any, would the granting of such relief in aid of the enforcement of the criminal laws of this state have upon the postal department?

■ First, it is obvious that there would be no ". . . direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions . . ." (Roth, case, supra.) The postal service would not be affected in its operations; there would be no responsibility on its behalf to screen mail addressed to Missourians; in no sense would the service be an enforcement agent of the lottery laws of Missouri; and granting of the relief sought

would not be an attempt to decide what can or cannot be accepted and delivered as mail. Only the respondent would be told that it cannot conduct its lottery (if, in fact, it is found to be a lottery) in Missouri or advertise it or solicit participation in it from residents of Missouri. Respondent would not be penalized for using the mails but for conducting an enterprise which is repugnant to the laws and public policy of this state.

■ Second, it must be determined whether or not granting the relief sought would have a proscribed *effect* upon the accomplishment of the purposes and objectives of the federal power in regulating the mails. The problem thus becomes one of resolving the significance of the issuance of a "certificate of mailability." Facially, it evidences a declaration that the material for mailing is not violative of the federal lottery laws and that the postal department will accept and deliver the same. Does it mean that the sender thereof, respondent in this instance, is thereby immunized from a state's action to enforce its own lottery laws? Respondent has not cited an authority so holding, and we are reluctant to declare that the postal service is or seeks to be in the business of promoting and encouraging violations of state laws. Nothing filed by way of an advisory "brief" by the postal department in this cause even suggests as much. Compliance with federal law is all that is indicated by the mailability permits.

■ Third, and lastly, the question arises as to whether or not the enactment of the federal lottery laws evidenced an intent and purpose to pre-empt state action to enforce lottery laws. We think not. If such a result would have been the federal purpose, the law enacted would have indicated as much. We reject the idea that the power delegated to the postal department to determine "mailability" encompassed, in what is apparently an ex parte approach, the objective of effectively repealing the lottery laws, if any, of the fifty states. We recognize the same for what it says, i. e.,

such material is not violative of federal lottery laws. The effectiveness of that ruling will not be frustrated by the requested state action.

■ We do not believe that the "federal interest [in lotteries] is so dominant that the federal system will be assumed to preclude enforcement of state laws" nor that "state policy may produce a result inconsistent with the objective of the federal statute." Rice case, supra.

The judgment entered is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.