COMMONWEALTH *vs.* CARLOS A. LUNA.

Suffolk. September 8, 1994. - November 8, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Admissions and confessions, Self-incrimination. *Practice, Criminal*, Instructions to jury, Voluntariness of confession, Affidavit. *Evidence*, Admissions and confessions, Expert opinion. *Intent. District Attorney. Jury and Jurors.*

There was no basis for a criminal defendant's claim that his trial testimony was inadmissible as a product of his involuntary written confession, where the defendant testified that the written statements were true. [751-752]

At the trial of indictments for perjury and filing false police reports, the judge's instruction to the jury on the wilfulness required for each crime was proper [753], and the judge was not required to instruct the jury on the defenses of following orders and reasonable reliance on authority, where the defenses were unavailable to the defendant, a police officer, who reasonably could have perceived the unlawfulness of the conduct alleged [753].

At a perjury trial the judge properly qualified an assistant district attorney as an expert to testify regarding the materiality of the statements of the defendant, a police officer, with respect to issues beyond the jury's common experience. [754]

The judge at a criminal trial properly refused to allow postverdict interviews of the jurors, where he correctly concluded that the allegations of extraneous influence were insufficient to warrant invading the sanctity of the jury's deliberations. [754-755]

There was no error at a criminal trial in the judge's allowing a witness to testify about his recollection and understanding of another judge's oral order to the defendant. [755]

At a criminal trial the judge's proper response to an inquiry from the jury neither detracted from nor altered his other instructions to the jury regarding specific intent. [755]

INDICTMENTS found and returned in the Superior Court Department on February 15, 1990.

The cases were tried before *John F. Moriarty*, J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Willie J. Davis* (*Marie Elena Saccoccio* with him) for the defendant.

*R. Michael Cassidy*, Assistant Attorney General, for the Commonwealth.

LYNCH, J. The defendant, Carlos A. Luna, appeals from his convictions in the Superior Court of perjury and filing false police reports and from the denial of his motion for a new trial. We transferred the case here on our own motion, and we now affirm the judgments and the denial of the motion for a new trial.

In February, 1988, the defendant, a Boston police officer, applied for a warrant to search the premises of an apartment in the Dorchester section of Boston. In the search warrant application, the defendant indicated that a specific informant had supplied him with information about drug dealing at the Dorchester apartment. The defendant's partner, Detective Sherman C. Griffiths, was killed while attempting to execute the warrant. Albert Lewin was arrested and charged with the murder of Detective Griffiths. For a more complete discussion of the police conduct involved in the investigation, arrest, and indictment of Lewin, see *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989). See also *Commonwealth* v. *Lewin (No. 3)*, 408 Mass. 147 (1990); *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629 (1990), *Commonwealth* v. *Lewin (No. 1)*, 407 Mass. 617 (1990).

In late February, 1989, a Superior Court judge (not the trial judge) directed the defendant to file an affidavit about his search for the so-called informant referred to in the warrant affidavit. On March 12, 1989, after eight days of discussing with his attorney his options and the related legal consequences of each option, the defendant signed an affidavit acknowledging that he had included false statements in the search warrant application and that he had told numerous lies in connection with the Lewin case. This affidavit en-

ded the defendant's ongoing effort to cover up his misconduct in the Lewin case.

In this appeal, the defendant raises numerous claims of error, the most substantial of which is that he was forced to testify by the improper introduction in evidence of his affidavit in derogation of his rights under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

This argument is based on the assertion that, although the motion judge, who was not the trial judge, found his affidavit to be voluntary, the jury subsequently found his affidavit to be involuntary. As a result, the defendant maintains that, under *Harrison* v. *United States*, 392 U.S. 219 (1968), his trial testimony explaining the statements made in his affidavit should not have been admitted because it was a product of his involuntary confession.

Our humane practice rule requires a judge to make a preliminary finding that a confession was voluntary before it can be introduced at trial. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 149-150, cert. denied, 457 U.S. 1137 (1982). If a judge decides that a confession is voluntary, he should then instruct the jury to consider the confession as evidence only if they also find that the confession was voluntary. *Id.* In this case, when the defendant moved to suppress his affidavit, the judge specifically held that the defendant signed his affidavit "voluntarily and without coercion and that the affidavit was the product of his free will and rational intellect."[1] The judge then admitted the defendant's affidavit, and properly instructed the jury about the humane practice rule. We conclude that the defendant's reliance on *Harrison* is misplaced.

---

[1] We are required to give substantial deference to the motion judge's finding of voluntariness, *Commonwealth* v. *White*, 374 Mass. 132, 138 (1977), aff'd by an equally divided Court, 439 U.S. 280 (1978). However, we are required independently to review judges' applications of constitutional principles to their findings of facts. *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986). After careful review, we hold that there was no error.

In *Harrison*, the Supreme Court held that the defendant was compelled to testify to explain away the facts contained within his illegally obtained confession. *Harrison* v. *United States*, *supra* at 225-226. The defendant confessed that he had gone to the victim's house armed with a shotgun to rob the victim, and that the victim had been killed while attempting to resist the defendant's entry into the house. *Id.* at 221. At trial the defendant testified instead that he went to the victim's house to pawn the gun, and that the victim was killed accidently when the defendant presented the gun for inspection. *Id.* "[E]ven if the [defendant] would have decided to testify whether or not his confession had been used, it does not follow that he would have admitted being at the scene of the crime holding the gun when the fatal shot was fired." *Id.* at 225. The confession placed the defendant at the victim's house for an illegal purpose. Unless he succeeded in explaining away this series of events, his conviction was a foregone conclusion. In this case, the defendant testified that the statements contained within his affidavit were true. His testimony corroborated, rather than contradicted, the statements contained in his affidavit. The question is not whether the defendant made a knowing decision to testify, but why. *Harrison*, *supra* at 223. Here, it cannot be said that his confession compelled the defendant to testify. Whatever motivated him to take the stand, his voluntary corroboration of statements previously made in his affidavit demonstrates that he was not motivated by a desire to explain away that affidavit. Even assuming that the jury found the defendant's affidavit to be involuntary, there is no basis to conclude that he was compelled by that affidavit to testify.

The defendant also raises the following claims which do not require extended discussion: (1) the judge failed properly to instruct the jury on the meaning of wilfulness; (2) the judge failed to instruct the jury as to the available defenses of following orders and reasonable reliance on authority; (3) the judge erroneously allowed an assistant district attorney to provide expert testimony about the materiality of the defendant's statements made in connection with the *Lewin*

case; (4) extraneous matters affected juror deliberations, and therefore, postverdict interviews should have been conducted; (5) the judge erroneously allowed a witness to testify about his recollection of a hearing before the judge who ordered the defendant to provide the affidavit; and (6) the judge failed properly to instruct the jury to consider the defendant's mental state on the issue of specific intent.

1. The judge did not err by failing to instruct the jury that the requirement of wilfulness for each crime dictates that a jury find a specific intent to act with a bad purpose or to do an evil act. Although "wilful" has been defined as knowledge with an evil intent or "a bad purpose," *Commonwealth* v. *Kneeland*, 20 Pick. 206, 220 (1838), the modern definition is that "wilful means intentional" without making reference to any evil intent as the defendant suggests. *Commonwealth* v. *Welansky*, 316 Mass. 383, 397 (1944). See *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991) ("wilful conduct" is intentional rather than accidental); *Adoption of a Minor*, 343 Mass. 292, 297 (1961) (term "wilfully" only requires actor to intend conduct; no ill will or malevolence required); *New England Trust Co.* v. *Paine*, 317 Mass. 542, 548 (1945) ("wilful default" is intentional making away with property). We conclude that the judge's instruction was proper.

2. The judge was not required to instruct the jury on the defenses of following orders and reasonable reliance on authority. In the only instance where this court has recognized such a rule, it did so only to absolve a member of the military from the consequences of his failure to stop at a red traffic light, and, even there, the court said that defense is unavailable if the conduct ordered is so "palpably unlawful" that a reasonable person would perceive "its unlawful quality." *Neu* v. *McCarthy*, 309 Mass. 17, 22-23 (1941). Therefore, even if we were to apply the principle in a serious criminal case, a doubtful proposition at best, the defense would be unavailable to this defendant given that a reasonable police officer would have perceived the unlawful nature of filing an illegal affidavit in court.

3. Neither did the judge err in allowing an assistant district attorney to testify as an expert regarding the materiality of the defendant's statements made in connection with the *Lewin* case. A judge can allow the introduction of expert testimony if such testimony will "help the jury understand issues of fact beyond their common experience. . . . even if the expert's opinion touches on the ultimate issues that the jury must decide." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). Certainly it was beyond the common experience of the jury to know when probable cause exists for the issuance of a search warrant or when a case will be dismissed for failure to identify a confidential informant. It borders on the frivolous to argue that it was beyond the judge's discretion to qualify as an expert on these matters an experienced assistant district attorney who, the judge found, had supervised hundreds of murder investigations and tried over thirty first degree murder cases.

4. The judge properly refused to allow postverdict interviews of the jurors. We have allowed postverdict interviews only where there is evidence that the jury considered extraneous matters during their deliberations. *Commonwealth* v. *Fidler*, 377 Mass. 192, 197, 203 (1979) (extraneous matters include improper communications with third persons or consideration of documents not in evidence). When deciding whether to conduct postverdict interviews, the judge must, therefore, distinguish between allegations of extraneous influence on the jury and allegations relating to the subjective mental processes of individual jurors. *Id.* at 198. The claim that during jury deliberations a juror indicated that he was prejudiced against law enforcement officers and that he thought police officers should never lie was not a basis for a showing that the jury were influenced by extraneous matters. The judge found this statement to be an expression of the individual juror's personal philosophy, rather than any type of extraneous influence or impermissible personal bias. See *Commonwealth* v. *Laguer*, 410 Mass. 89, 97-99 (1991) (discussing possibility of invading sanctity of jury deliberations in instances where there is evidence of racial or ethnic bias).

We agree. The judge properly ruled that the juror's statement was insufficient to warrant invading the sanctity of the jury's deliberations.

5. It was not error for the trial judge to allow a witness to testify (1) about his recollection of a hearing at which another judge orally ordered the defendant to file an affidavit in connection with the *Lewin* case, and (2) about what the witness understood the judge to mean by his oral order. The defendant argues that allowing such testimony was the equivalent of allowing parol evidence to explain the judge's order. This argument is most easily disposed of by noting both that the judge's order was not in writing and that the defendant first raised the matter of what the judge said at the time that he issued the order in question.

6. In response to a question from the jury on the third day of their deliberations, the judge properly instructed that the Commonwealth would have the burden of establishing the defendant's criminal responsibility if it had been raised. The issue of criminal responsibility was not raised by the evidence in this case. The defendant for the first time on appeal maintains that the jury's question pertained not only to the issue of criminal responsibility, but also to the issue of specific intent. The judge's instructions neither detracted from nor altered his other instructions regarding specific intent.

7. We affirm the judgments and the order denying the defendant's motion for a new trial.

*So ordered.*