Carlos LUNA, Petitioner,

v.

COMMONWEALTH OF
MASSACHUSETTS,
Respondent.

No. CIV.A. 96–10978–MLW.

United States District Court,
D. Massachusetts.

Aug. 26, 2002.

William J. Davis, Davis, Robinson & White LLP, Boston, MA, for Petitioner.

Pamela L. Hunt, Attorney General's Office, Chief, Appellate Division, Boston, MA, for Respondent.

### ORDER

WOLF, District Judge.

The court has considered the April 30, 2002 Report and Recommendation of the Magistrate Judge (Docket No. 27) and the petitioner's objections to it (Docket No. 28). The Report and Recommendation is persuasive. The state court decisions at issue in Grounds One and Two of the petition were neither "contrary to" nor "unreasonable applications of" clearly es-

tablished Supreme Court precedent. Although Luna has not objected to the Report with respect to Grounds Three, Four, and Five of the petition, these grounds present issues of state law not cognizable in this action. Accordingly, for the reasons stated by the Magistrate Judge, it is hereby ORDERED that Luna's Petition for Writ of Habeas Corpus (Docket No. 1) is DENIED.

### REPORT AND RECOMMENDATION ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS (# 13)

COLLINGS, United States Magistrate Judge.

#### I. Introduction

■ On May 9, 1996, Carlos Luna ("Luna" or the "petitioner") commenced the instant action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] (# 1). On March 1, 1999, the respondent Commonwealth of Massachusetts (the "Commonwealth" or the "respondent") submitted a Motion to Dismiss (# 6) and a supporting memorandum in which it argued that the petitioner's petition for writ of habeas corpus should be dismissed because the petitioner had failed to exhaust available state court remedies as to two of the grounds in the petition. On March 26, 1999, the petitioner submitted a Memorandum of Petitioner in Opposition to Motion to Dismiss (# 9) and on September 11, 2000, Judge Wolf issued a

Memorandum and Order on the respondent's motion to dismiss (# 10) allowing the motion to dismiss without prejudice on the grounds that the petitioner had exhausted the available state remedies for the fourth ground for his petition, but had not exhausted state remedies for the third ground for his petition.

On October 6, 2000, the petitioner filed a motion for leave to amend his petition for writ of habeas corpus (# 11) requesting that he be allowed to amend his petition by deleting the one issue as to which there had been a failure to exhaust state remedies, and on January 16, 2001, Judge Wolf allowed the petitioner's motion to amend. Thus, on January 16, 2001, the petitioner filed an Amended Petition for Writ of Habeas Corpus (# 13)(the "petition") and on February 27, 2001 submitted a supporting Memorandum of Petitioner (# 15), setting out five grounds on which he argued he was entitled to habeas relief. On July 19, 2001, the respondent submitted a Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus (# 25) in which it requests that the Court deny the petition. On July 11, 2001, the District Judge to whom the case is assigned referred the petition to the undersigned for the issuance of a report and recommendation as to disposition on the merits pursuant to 28 U.S.C. § 636(b)(1)(B).

1. It is worth noting that the petitioner was considered to be "in custody" when he filed his petition for a writ of habeas corpus even though he was on probation rather than actually physically confined. *See Brooks v. N.C. Dep't of Correction*, 984 F.Supp. 940, 946 (E.D.N.C.1997)(quoting *Tinder v. Paula*, 725 F.2d 801, 803 (1 Cir., 1984))("probationers are also subject to 'restraints not shared by the public generally,' and should therefore be considered 'in custody' for habeas corpus purposes."). Moreover, even though the petitioner's term of probation ended in or about June, 1996, he was still on probation when he filed

his petition for a writ of habeas corpus on May 9, 1996; thus, even though he is not on probation or "in custody" today, this Court still has jurisdiction to entertain the petition for writ of habeas corpus given that the petitioner was serving his probation at the time he filed his original petition. *See Wood v. Hall*, 130 F.3d 373, 376 (9th Cir.1997), *cert. denied*, 523 U.S. 1129, 118 S.Ct. 1818, 140 L.Ed.2d 955 (1998)("Although [petitioner] has been released from custody and his probation has been terminated, we reject the state's contention that his habeas corpus petition is moot.").

## II. The Facts and the Procedural History [2]

In February, 1988, the petitioner, a Boston police officer, applied for a warrant to search the premises of an apartment at 102 Bellevue Street in the Dorchester section of Boston. (# 25, p. 3). In the search warrant application, the petitioner indicated that a specific informant ("IT") had supplied him with information about drug dealing at the Bellevue Street apartment. (*Id.*). He asserted in his affidavit that IT had provided him information in the past that led to the arrest of two named individuals and that IT had been inside the apartment and had observed a Hispanic male engaging in weighing, packaging and selling cocaine. (*Id.* at p. 4). The petitioner's partner, Sherman Griffiths, was killed while attempting to execute the warrant. (*Id.* at p. 3). Albert Lewin ("Lewin") was arrested and charged with the murder of Detective Griffiths. (*Id.*).

Contrary to the information the petitioner had supplied in the search warrant application, the petitioner actually had not received information from an informant about drug dealing at the Bellevue Street apartment. (*Id.* at p. 5). A drug purchase was made at that apartment on February 15th by an informant named "Joe" who at the time was working for Sergeant Detective Hugo Amate and another detective.

(*Id.*). The petitioner was not present at that drug purchase. (# 25, p. 5). A drug purchase was also made from that same apartment on February 16th by "Debbie", another informant of Sergeant Amate. (*Id.*). The petitioner accompanied Debbie into the building, but not to the third floor where the purchase was made. (*Id.*).

At a probable cause hearing in connection with the murder trial of Lewin, the petitioner testified consistent with statements he had made in his search warrant affidavit. (*Id.* at p. 6). He also submitted two police reports prior to the probable cause hearing in which he said he himself made the drug purchases on February 15th and 16th. (*Id.*).

After that, over a period of months, the petitioner met several times with Assistant District Attorney ("ADA") Francis O'Meara ("O'Meara") who was prosecuting the case against Lewin. (*Id.*). O'Meara told the petitioner that the confidential informant "IT" would have to be produced, and the petitioner responded that he would not disclose IT's identity until ordered to do so by a court. (*Id.* at pp. 6–7). The petitioner continuously assured O'Meara that IT did exist. (*Id.* at p. 7).

In August, 1988, in connection with the Lewin case, Superior Court Judge Grabau

---

2. This case dates back to 1988. Thus, the facts and procedural history are extensive and confusing, but the parties are in accord as to most of the basic facts. The petitioner's recitation of the facts and procedural history is set out at pp. 2–16 of the Memorandum of Petitioner (# 12) and the respondent's version is at pp. 1–11 of its Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus (# 25). I hereby adopt the version of the facts recounted by the Massachusetts Supreme Judicial Court ("SJC") in *Commonwealth v. Luna*, 418 Mass. 749, 750–51, 641 N.E.2d 1050, 1051–52 (1994)(attached to Respondent's Supplemental Answer # 8 at Tab 3) and by the Massachusetts Superior Court in its various opinions. *See generally* # 8, Tab 2 at pp. 76–81, 124–128. I presume all of those facts to be true as I must pursuant to 28 U.S.C. § 2254(e)(1). For the purposes of brevity, I restate only those facts that are relevant for purposes of issuing a Report and Recommendation on the instant petition and at times quote the facts verbatim. (Citations are to the Respondent's Memorandum of Law, # 25, unless otherwise noted, rather than to the underlying decisions by the SJC and the Massachusetts Superior Court.) In the Analysis section of this Report and Recommendation, *infra*, I recount additional facts where necessary to provide background for a discussion of the legal issues.

ordered the disclosure of the identity of IT, and O'Meara told the petitioner about the court's order. (# 25, p. 7). The petitioner prepared and filed a police report containing specific detailed information about a fictitious informant "John" whom the petitioner said was IT. (*Id.*) Judge Grabau ordered that the informant be produced. (*Id.*). For the next three months, the petitioner engaged in a "search" for the nonexistent informant John; the petitioner filed fourteen reports detailing his attempts to locate John. (*Id.*).

Lewin moved to dismiss the murder indictment against him on the ground that the government failed to produce the informant. (*Id.* at p. 8). At a hearing on this motion, the petitioner testified about his attempts to locate the informant and gave details about his dealings with the informant. (*Id.*). Judge Grabau dismissed the murder indictment against Lewin on the ground that the government failed to produce a material witness. (*Id.*).

O'Meara then learned that an informant named Joe Mucci ("Mucci") had participated in the drug buys at the Bellevue Street apartment. (*Id.*). O'Meara located and interviewed Mucci and then informed police that he thought Mucci was the informant who made the drug buys, thus exposing the petitioner's story as untrue. (*Id.*). O'Meara moved for a rehearing of the *Lewin* case dismissal based on his information about Mucci. (# 25, p. 8). Judge Grabau ordered that if the petitioner (among others) chose not to assert his rights, he must file an affidavit concerning his search for the informant. (*Id.* at pp. 8–9).

Beginning about March 3, 1989, the petitioner met with Attorney Mark Sullivan ("Sullivan") numerous times over the course of nine days to discuss the ramifica-

tions of filing a truthful affidavit in response to the court's order. (*Id.* at p. 9). On March 12, 1989, the petitioner executed an affidavit (the so-called "come clean affidavit") in which he admitted that statements he made on the search warrant application and in the court hearings were not true. (*Id.*). The petitioner admitted that the search warrant affidavit reflected collective knowledge of the police squad members and that he substituted himself as the drug purchaser in order to protect the informants. (*Id.* at pp. 9–10). The SJC reinstated the indictments against Lewin, and the petitioner testified at a hearing on a motion to dismiss those indictments that he had lied on the original search warrant affidavit.[3] (*Id.* at p. 10).

At the 1991 trial charging the petitioner with perjury and filing false reports, the petitioner testified consistent with his March 12, 1989 come clean affidavit and his later testimony at the reconsideration hearing in the Lewin case. (# 25, p. 10). That is, he testified that he had lied on the original search warrant affidavit. (*Id.*). On June 5, 1991, the petitioner was found guilty by a jury of fifteen counts of filing false reports and ten counts of perjury. (*Id.* at p. 2). A mistrial was declared on the remaining charges of perjury and filing false reports on which no verdict could be reached. (*Id.*) On June 13, 1991, the court placed the petitioner on probation for five years. (# 15, p. 8.). A condition of probation imposed was that he resign from the Boston Police Department, but that provision was stayed pending appeal. (*Id.*).

The petitioner appealed the judgments of conviction and filed a motion for a new trial. (*Id.*). On January 6, 1992, the motion for a new trial was denied, and the

---

**3.** The petitioner did testify at Lewin's trial, and Lewin was ultimately acquitted of the murder of Detective Griffiths. (*Id.* at n. 4).

petitioner appealed that denial. (*Id.*). The SJC affirmed the conviction. *See Commonwealth v. Luna,* 418 Mass. 749, 641 N.E.2d 1050 (1994). (*Id.*). Thereafter, the petitioner filed the instant petition with this court.[4]

### III. Analysis

Title 28 U.S.C. § 2254(d)(1), the applicable habeas corpus statute, provides that:

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The petitioner has asserted that he is entitled to habeas relief based on five separate grounds. Those grounds are as follows:

1. Because the petitioner's affidavit/confession was coerced, its admission into evidence violated the due process clause of the Fifth Amendment, made applicable to the states under the Fourteenth Amendment (# 15, p. 17);

2. Because the trial testimony of the petitioner was compelled by the in-

troduction into evidence of the affidavit/confession, error of constitutional proportion was committed by the trial judge in allowing the jury to consider the trial testimony in the face of the jury's belief that the affidavit/confession was psychologically coerced (# 15, p. 21);

3. The failure of the trial judge to instruct the jury on defenses raised by the petitioner violated the due process clause of the Fourteenth Amendment (*Id.* at p. 25);

4. Permitting a prosecutor to testify as to what was "material" constituted a violation of due process (*Id.* at p. 36);

5. Refusal to instruct the jury that it could consider the mental state of the petitioner on the issue of specific intent was a violation of due process (*Id.* at p. 39).

In its Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus (# 25) the respondent requests that the Court dismiss the petition, arguing that Grounds 1–3 of the petition are not "contrary to" or "unreasonable applications of" established Supreme Court precedent and that Grounds 4 and 5 are purely matters of state law, not cognizable on habeas review. Because I will recommend that the petition be denied, I will address *seriatim* each of the five grounds raised by the petitioner and explain why none of the grounds provides a basis for habeas relief.

Turning first to Grounds 1–3, I must determine whether any of these state court legal determinations were "contrary to" or "unreasonable applications of" established Supreme Court law. If any of them were,

---

4. The petitioner originally filed a petition containing six grounds upon which he asserted he should be entitled to habeas relief. After the respondent filed a motion to dismiss and Judge Wolf issued an opinion (*see* discussion at p. 1 of this Report and Recommendation, *supra*), the petitioner amended the petition. The petition as it stands now asserts five grounds upon which the petitioner argues he is entitled to habeas relief.

then the petitioner should be entitled to habeas relief. In order to make such determinations, however, it is necessary first to set forth the applicable standards.

### A. Standards

#### 1. "Contrary to" Standard

The Supreme Court in *Williams v. Taylor*, explained that:

> a state court decision would be "contrary to" the [Supreme] Court's clearly established precedent if it 'applie[d] a rule that contradicts the governing law set forth in [the Court's] cases.... A state-court decision will also be contrary to th[e] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from our precedent.'

*Hurtado v. Tucker*, 245 F.3d 7, 15 (1st Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 282, 151 L.Ed.2d 208 (2001) (quoting *Williams*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

`In deciding whether the "contrary to" prong applied in that case, the *Hurtado* court stated that "this case presents a good example of one to which § 2254(d)(1)'s 'contrary to' prong does not apply: 'a run-of-the-mill state-court decision applying the correct legal rule from [the Supreme Court's] cases to the facts of a prisoner's case.'" *Hurtado*, 245 F.3d at 15(quoting *Williams*, 529 U.S. at 406, 120 S.Ct. 1495); *see also O'Brien v. Dubois*, 145 F.3d 16, 25 (1 Cir.1998)(interpreting "contrary to" prong to require an inquiry as to whether the Supreme Court had prescribed a rule that governed petitioner's claim which required an outcome contrary to that reached by the state court).

#### 2. "Unreasonable Application of" Standard

The Supreme Court in *Williams* held that a state court decision would involve an 'unreasonable application of' clearly established Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case...." The Court also underscored that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law...." Indeed, because Congress used the word "unreasonable" in § 2254(d)(1), and not words like "erroneous" or "incorrect", a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

*Hurtado*, 245 F.3d at 15–16 (quoting *Williams*, 529 U.S. at 410–11, 120 S.Ct. 1495)(internal citations omitted)(emphasis in original).

The *Hurtado* court explained further that the Supreme Court in *Williams* explicitly rejected the view...that an "'unreasonable application of' clearly established federal law requires that the application be one that *all* reasonable jurists would agree was unreasonable.... Thus, the test is an objective one and not so stringent as to require that all reasonable jurists agree the state court decision was unreasonable."

*Hurtado*, 245 F.3d at 17 (emphasis in original).

I must determine now whether any of the state court's determinations in the petitioner's case were contrary to or an unreasonable application of established Supreme Court precedent.

## B. Petitioner's Asserted Grounds for Habeas Relief

### 1. Ground 1—Coercion of the petitioner's affidavit/confession

The petitioner argues that the come clean affidavit in which he confesses to having lied about the existence of IT (the informant) was psychologically coerced by Sullivan, the attorney hired by the Police Union to advise the petitioner. (# 15, p. 17). The gist of the petitioner's argument is that in his numerous conversations with Sullivan, Sullivan gave him many reasons that he should sign the affidavit, including that if he signed the affidavit, the case against Lewin would be reinstated, that the Griffiths family would blame the petitioner if the case was not reinstated and that the petitioner could be fired if he did not sign the affidavit. (*Id.* at p. 18).[5]

Despite the list of reasons given by the petitioner as evidence of the supposed psychological coercion he suffered, the only ground actually relied on by the petitioner to support his argument that he is entitled to habeas relief is that he was told by Sullivan that he could be fired if he did not sign the come clean affidavit. The petitioner relies on *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) to bolster his argument. In *Garrity*, the Supreme Court held that when a policeman had been compelled to testify under the threat that if he did not testify he could be removed from his job, the testimony that he gave could not be used against him in subsequent proceedings.

The respondent disagrees with the petitioner's argument, asserting that there is no factual support for the petitioner's claim that he was coerced into signing the come clean affidavit. Further, the respondent argues that the *Garrity* case does not apply at all because in that case the policemen were told by their employer that they could be fired if they did not testify whereas in the instant case, the petitioner was informed of his possible termination not by his employer but by an attorney who had been hired to represent him.

During the state court hearing on the petitioner's motion to suppress his come clean affidavit (held on December 7, 1990), the motion judge found that the petitioner signed the affidavit voluntarily. Indeed, the judge made extensive findings to this effect. *See* # 8, Tab 2 at pp. 75–83 ("Sullivan explained to the [petitioner] ... his right to take the Fifth Amendment."; "Sullivan advised the [petitioner] that he did not have to file the affidavit and that he could assert his Fifth Amendment privilege."; Sullivan "told [petitioner] that a perjury indictment was a distinct possibility" if he did file the affidavit.; "This court finds that whatever motivation [petitioner] had for executing the ... affidavit, ... the [petitioner] was never promised that his 'cooperation' in filing the affidavit would aid in his defense ..., nor was he coerced into the decision by his attorney or others."; Petitioner "was never told by a police department official that he would lose his job ... in connection with his execution" of the affidavit; "this court concludes beyond a reasonable doubt that the [petitioner] signed the March 12, 1989 voluntarily and without coercion.").

In order to decide whether the petitioner might be entitled to habeas relief, I must determine whether the motion judge's finding that the petitioner's affidavit was given voluntarily is contrary to or

---

5. There is a dispute over whether Sullivan ever advised the petitioner of his Fifth Amendment privilege. The petitioner says he was never so advised, and Sullivan says that he advised the petitioner of the privilege but nevertheless never advised the petitioner not to sign the affidavit. (*Id.* at p. 18).

an unreasonable application of established Supreme Court precedent. The Supreme Court cases most directly addressing the coercion issue are *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) and *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In *Connelly,* the Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment" and that inquiries into the state of mind of a criminal defendant who confesses are best left to be governed by state evidentiary laws rather than by the Due Process Clause. *Connelly,* 479 U.S. at 167, 107 S.Ct. 515. And, in *Lego,* the Supreme Court held that

> when a confession challenged as involuntary is sought to be used against a criminal defendant . . . , he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary. Of course, the States are free, pursuant to their own law, to adopt a higher standard.

*Lego,* 404 U.S. at 489, 92 S.Ct. 619.

■ In sum, the Supreme Court instructs that the inquiry into a confessor's state of mind is best left to state evidentiary rules and that the prosecution must prove by (at least) a preponderance of the evidence that a criminal defendant's con-

fession was voluntary.[6] In the case at bar, the motion judge's finding cannot be said to be contrary to Supreme Court precedent. The Supreme Court "rule" on the issue is that a confession must be found to be voluntary by a preponderance of the evidence, and indeed the motion judge found not only by a preponderance of the evidence that the petitioner's confession was voluntary but that it was voluntary "beyond a reasonable doubt." (# 8, Tab 2, p. 83). Additionally, the judge made sufficient factual findings to support his conclusion. Thus, there is nothing in the motion judge's decision that could be said to be contrary to established Supreme Court law. Nor was the motion judge's finding an unreasonable application of established Supreme Court precedent. As stated above, a state court decision would involve an unreasonable application of clearly established Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. . . ." *Hurtado,* 245 F.3d at 15. In other words, I must determine whether the state court's decision that the petitioner's affidavit was voluntarily given was objectively unreasonable. I find that there is nothing in the record or in the petitioner's filings to demonstrate that the judge's finding that the come clean affidavit was voluntarily given was objectively unreasonable. The motion judge listened to extensive testimony on the issue[7] from the petitioner and from Sullivan and made a well-reasoned, well-

---

**6.** I find that the *Garrity* case, relied on by the petitioner, is not even applicable in the instant circumstance because that case made clear that the prohibition against using the threat of removal from office in order to coerce a confession applies only if there is State action. *See Garrity,* 385 U.S. at 499, 87 S.Ct. 616 ("Our question is whether a State, contrary to the requirement of the Fourteenth Amendment, can use the threat of discharge to secure incriminatory evidence against an employee."). Attorney Sullivan, the one who allegedly made the threat of removal from office to the petitioner, was not a state actor but was a private attorney.

**7.** Indeed, the transcript of the motion to suppress hearing fills nearly 175 pages. *See* # 16.

supported determination that the come clean affidavit was voluntarily executed by the petitioner.

In sum, it is manifest that the motion judge's decision that the petitioner's come clean affidavit/confession was given voluntarily is not contrary to or an unreasonable application of established Supreme Court precedent. Therefore, Ground 1 does not provide a basis for habeas relief.[8] I turn now to the second ground raised by the petitioner.

### 2. Ground 2—Petitioner's trial testimony

■ As a second ground for habeas relief, the petitioner argues that the judge who presided at the petitioner's trial should not have allowed the jury to consider the petitioner's trial testimony because the jury had already determined that the petitioner's come clean affidavit/confession was psychologically coerced. (# 15, pp. 21–25).[9] In short, the petitioner is making a "fruit of the poisonous tree" type of argument-because the affidavit was coerced, anything that flowed from it (i.e., the petitioner's trial testimony) was tainted and should not have been taken into consideration by the jury. The petitioner relies on *Harrison v. U.S.*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) to support his argument.

Not surprisingly, the respondent argues that the judge's decision to allow the jury to consider the petitioner's trial testimony is neither contrary to nor an unreasonable application of *Harrison*. (# 25, pp. 25–29). In *Harrison*, the Supreme Court held that when a defendant testified in order to overcome the impact of confessions *illegally obtained*, then his testimony would be "tainted by the same illegality that rendered the confessions themselves inadmissible." *Harrison*, 392 U.S. at 223, 88 S.Ct. 2008. In brief, the facts of *Harrison* are as follows: the defendant confessed that he had gone to the victim's house armed with a shotgun to rob the victim and that the victim had been killed while attempting to resist the defendant's entry into the house. *Harrison*, 392 U.S. at 221, 88 S.Ct. 2008. At trial, the defendant testified instead that he went to the victim's house to pawn the gun, and that the victim was killed accidentally when the defendant presented the gun. *Id.* The defendant was forced to explain away his confession; that is, his confession placed him at the victim's house for an illegal purpose and unless he could explain away his being there, he inevitably would be convicted. Thus, for the holding of *Harrison* to apply, the initial confession must be determined to have been illegally obtained before the subsequent testimony can be determined to be "illegally tainted."

---

8. The petitioner did not argue that 28 U.S.C. § 2254(d)(2) applies to his case. Looking briefly at that statutory section, I find that *vis-à-vis* ground one, there was no unreasonable determination of the facts based on the evidence presented in state court. Although I do not discuss it in detail, I find also that section (d)(2) does not provide a basis for relief *vis-à-vis* any of the other four grounds either because there were no unreasonable determinations of the facts based on the evidence presented in state court.

9. There seems to be considerable debate as to whether the jury actually made such a finding. The respondent's position is that the petitioner is inferring that the jury decided that the come clean affidavit was coerced based on a question posed by the jury to the judge during deliberations in which the jury asked, "If the jury feels that [the come clean affidavit] was obtained under psychological coercion, and therefore disregards it, can the jury consider statements made by [the petitioner] and others during this trial pertaining to this affidavit?" (# 25, p. 26).

The first distinction between this case and *Harrison* is that petitioner's come clean affidavit was properly admitted at trial whereas the confessions which the defendant had given in the *Harrison* case were not. As previously discussed, the Superior Court's finding, adequately supported, that the prosecution had proven beyond a reasonable doubt that the come clean affidavit was voluntarily executed meant that the affidavit was properly admitted at trial. The fact that the jury might possibly have found at the conclusion of the trial that the affidavit was not voluntarily executed does alter the analysis.

The SJC, in affirming the petitioner's conviction, looked to the *Harrison* case and held that the petitioner's reliance on that case was misplaced for a different reason. *Luna*, 418 Mass. 749, 751, 641 N.E.2d 1050, 1052 (1994). The SJC explained that in the petitioner's case, unlike in the *Harrison* case, "it cannot be said that [the petitioner's] confession compelled the [the petitioner] to testify. Whatever motivated him to take the stand, his voluntary corroboration of statements previously made in his affidavit demonstrates that he was not motivated by a desire to explain away that affidavit." *Luna*, 418 Mass. at 752, 641 N.E.2d at 1052. Thus, the second crucial distinction between the petitioner's case and *Harrison* is that in the former case, the petitioner was not compelled to take the stand to explain away statements in his affidavit; during his testimony, he merely confirmed what he had already said in the affidavit. In contrast, in *Harrison*, the defendant was forced to testify in order to explain away his prior confession. The SJC therefore found that *Harrison* was inapplicable. I must decide whether the SJC's decision was contrary to or an unreasonable application of established Supreme Court precedent.

To recap, a state court decision can only be said to be contrary to federal law if the state court "applie[d] a rule that contradicts the governing law set forth in [the Court's] cases....[or] if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from our precedent." *Hurtado*, 245 F.3d at 15 (quoting *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495). In the case at bar, the SJC did not apply any rule that contradicted the governing law set forth in *Harrison* nor did the SJC confront a set of facts that were indistinguishable from a decision of the Supreme Court and arrive at a different result. Quite the contrary, the SJC found that the *Harrison* case was inapplicable to the petitioner's case on the grounds that the facts of the petitioner's case were materially distinguishable from the facts of *Harrison*. Specifically, the SJC stated that "[i]n this case, [unlike in *Harrison*], the [petitioner] testified that the statements contained within his affidavit were true. His testimony corroborated, rather than contradicted, the statements contained in his affidavit. The question is not whether the [petitioner] made a knowing decision to testify, but why." *Luna*, 418 Mass. at 752, 641 N.E.2d at 1052. Thus, the SJC's ruling on this issue cannot be said to be contrary to Supreme Court precedent because the SJC did not apply a rule that contradicted established Supreme Court law nor did it confront a set of facts that were indistinguishable from a decision of the Supreme Court and arrive at a different result.

Moreover, the SJC's decision on this issue was not an unreasonable application of established Supreme Court law. In sum, a state court decision would involve an unreasonable application of clearly established Supreme Court precedent only if

it "identifie[d] the correct governing legal principle from [the] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case...." *Hurtado,* 245 F.3d at 15–16 (quoting *Williams,* 529 U.S. at 410–11, 120 S.Ct. 1495). This is simply not the situation here. In the instant case, the SJC identified a governing legal principle from the Supreme Court's decisions (i.e., the *Harrison* precedent) but ultimately determined that that principle did not apply to the facts of the petitioner's case. Thus, there was no "unreasonable application of" Supreme Court law. Ground 2 of the petition, therefore, provides no basis upon which habeas relief can be granted.

### 3. Ground 3—Failure to instruct the jury on defenses

The third ground raised the petitioner as a basis for habeas relief is that the failure of the trial judge to instruct the jury on certain defenses-reasonable reliance and following orders—violated the due process clause. The petitioner's argument is premised on the following facts: the petitioner was not trained to draft a proper affidavit to obtain a search warrant but was given a form to use that had been approved in another case. (# 15, p. 25). The petitioner was told to copy the form, substituting names and places, and he followed these instructions. (*Id.*). Moreover, prior to testifying in one of the many hearings in the *Lewin* case, the petitioner was told by the District Attorney to tell the court that he had been unable to find the informant and that he would continuing looking. (*Id.*). Finally, the petitioner had been instructed by his superiors to make reports on buys of cocaine he did not make and to make reports on attempts to

find the informant whom the superiors knew did not exist. (*Id.*). The petitioner relies on three Supreme Court cases in support of his argument that the "defense of reasonable reliance upon authority, more recently termed 'entrapment by estoppel,' is mandated by the Due Process Clause"—*U.S. v. Pennsylvania Industrial Chem. Co.,* 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973), *Cox v. State of La.,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *Raley v. State of Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959).

■ I need decide only whether the trial court's failure to instruct on the defense of following orders provides a possible basis for habeas relief. Even if the trial court failed to instruct on the defense of reasonable reliance on authority, it is irrelevant because the petitioner requested that instruction only as to the charge of perjury in the search warrant affidavit, and the petitioner was not convicted on that charge of perjury. (# 25, pp. 30, 35 and n. 12). The jury was unable to reach a verdict on that charge. (*Id.* at p. 35). Obviously, there can be no due process violation if the petitioner did not suffer any adverse consequences as a result of the trial judge's failure to give the requested instruction.[10]

■ So the question is whether the trial judge's failure to give the following orders instruction was *contrary to or an unreasonable application* of established Supreme Court precedent. The SJC squarely addressed the trial court's failure to give that instruction, stating:

[t]he judge was not required to instruct the jury on the defenses of following orders and reasonable reliance on au-

10. Theoretically, because there was a mistrial on this charge rather than a jury finding of not guilty, the Commonwealth could have retried the petitioner on this charge. However, the Commonwealth did not do so and thus it cannot be said that there was any due process violation as a result of the trial judge's failure to give the reasonable reliance instruction.

thority. In the only instance where this court has recognized such a rule, it did so only to absolve a member of the military from the consequences of his failure to stop at a red traffic light, and, even there, the court said that defense is unavailable if the conduct ordered is so "palpably unlawful" that a reasonable person would perceive "its unlawful quality." *Neu v. McCarthy,* 309 Mass. 17, 22–23, 33 N.E.2d 570 (1941). Therefore, even if we were to apply the principle in a serious criminal case, a doubtful proposition at best, the defense would be unavailable to this defendant given that a reasonable police officer would have perceived the unlawful nature of filing an illegal affidavit in court. *Luna,* 418 Mass. at 753, 641 N.E.2d at 1053.

I was unable to locate any Supreme Court law on the following orders defense, and it is clear from the SJC's explanation that the defense is rarely used in Massachusetts at all and likely would never be used in a criminal case. Moreover, even if it were used in some criminal cases, the SJC found that the defense was not available to the petitioner because as a police officer he "would have perceived the unlawful nature of filing an illegal affidavit in court." *Id.*

It is clear that whether the following orders defense exists at all and when it would be applicable are purely matters of state law, and it is well-established that matters of state law are not cognizable on habeas review. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)("it is not the province of a federal habeas court to reex-

amine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."). Thus, in the instant case, as to Ground 3 of the petition, there is no basis for habeas relief because the issue is one of state law. Therefore, as to Grounds 1, 2 and 3, I will recommend that the petitioner not be granted habeas relief. I turn now to Grounds 4 and 5 of the petition.

### 4. *Ground 4—Permitting a prosecutor to testify as an expert witness*

■ The petitioner claims that he is entitled to habeas relief on the grounds that the trial judge, over the objection of defense counsel, allowed ADA O'Meara to answer questions as to the materiality of certain false statements and thus violated the petitioner's due process rights.[11] (# 15, p. 36). Both the trial judge and the SJC deemed the opinion of O'Meara to be admissible because he was considered to be an expert. The petitioner argues, however, that because materiality is a question of fact for the jury, permitting O'Meara to answer the questions usurped the authority of the jury. (# 15, p. 36) Moreover, the petitioner asserts that even if O'Meara were determined to be an expert, he would still be prohibited from assisting the jury in reaching a decision of fact that it was equally competent to assess. (*Id.*). Permitting O'Meara to tell the jury what was, in his opinion, material was in essence to compel a finding against the petitioner as to the materiality element of the offense. (*Id.* at p. 38).

---

11. Materiality is one of the elements of the crime of perjury, and each element must be proven beyond a reasonable doubt. *See, e.g., In the Matter of Edwin A. McCabe,* 411 Mass. 436, 449 n. 18, 583 N.E.2d 233, 240 n. 18

(1991)("Perjury consists of intentional testimony by a person, while under oath, of a knowingly false statement of a material fact. Perjury is a crime, each element of which must be proved beyond a reasonable doubt.").

The respondent disputes the petitioner's contentions and argues that whether or not the trial judge allowed O'Meara to testify on the issue of materiality is a question of state evidentiary law and thus is not cognizable on habeas review. As mentioned above, the SJC held that the trial judge did not err in allowing O'Meara to testify, explaining that:

> A judge can allow the introduction of expert testimony if such testimony will "help the jury understand issues of fact beyond their common experience...even if the expert's opinion touches on the ultimate issues that the jury must decide." *Simon v. Solomon,* 385 Mass. 91, 105, 431 N.E.2d 556 (1982). Certainly it was beyond the common experience of the jury to know when probable cause exists for the issuance of a search warrant or when a case will be dismissed for failure to identify a confidential informant. It borders on the frivolous to argue that it was beyond the judge's discretion to qualify as an expert on these matters an experienced assistant district attorney who, the judge found, had supervised hundreds of murder investigations and tried over thirty first degree murder cases.

*Luna,* 418 Mass. at 754, 641 N.E.2d at 1053.

■ Despite the petitioner's blanket statement that "it was error of Constitutional proportion to permit O'Meara to testify" (# 15 at p. 37), the petitioner does not explain how any constitutional issue is concerned and offers no valid support for his conclusory assertion. The petitioner cites to three cases, none of which is a Supreme Court case and none of which is particularly relevant to the issue at hand. I need not even analyze in depth the cases cited by the petitioner since I find that the fourth ground in the petition-that the trial judge should not have let O'Meara testify

as to what was material-is a matter of state law and thus is not a possible basis for habeas relief. Simply put, there is no constitutional concern implicated here.

In addition, even if the issue were not one of state law (which clearly it is), the petitioner still must demonstrate that the trial court's decision was contrary to or an unreasonable application of established *Supreme Court precedent.* To recap, 28 U.S.C. § 2254(d)(1) sets out that, "[a]n application for writ of habeas corpus... shall not be granted ... unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court of the United States.*" (emphasis added).

None of the cases cited by the petitioner is a Supreme Court case and indeed, I could locate no Supreme Court cases addressing the instant issue. Thus, the petitioner has not delineated any rule of Supreme Court law about allowing a lawyer to testify as an expert witness as to the materiality of false statements in a perjury trial; obviously then, the trial court's decision cannot be said to be contrary to or an unreasonable application of established Supreme Court precedent if there is no such existing precedent.

To allay all question, however, I will briefly address the cases cited by the petitioner. All three of the cases relied on by the petitioner-*Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989), *U.S. v. Zipkin,* 729 F.2d 384 (6th Cir.1984) and *U.S. v. Baskes,* 649 F.2d 471 (1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981)-concern the interpretation of the Federal Rules of

Evidence.[12] Obviously, the instant case and the purported error by the state trial court involve Massachusetts *state* rules of evidence, not the Federal Rules of Evidence. Moreover, the Federal Rules of Evidence preclude an expert's opinion on an ultimate issue only when the issue regards the defendant's state of mind or mental condition. *See* Fed.R.Evid. 704(b). Therefore, even if the Federal Rules of Evidence had applied in the petitioner's perjury trial (which they did not), it seems that O'Meara would have been allowed to testify as he did since his testimony did not relate to the defendant's state of mind or mental condition. The issue raised by the petitioner in Ground 4 of his petition is based solely in state law; it has no constitutional implications and thus does not provide any basis for habeas relief.

### 5. *Ground 5—Mental state of Luna on issue of specific intent*

As the final ground of his petition, the petitioner asserts that it was a violation of due process for the trial judge to refuse to instruct the jury that the mental capacity of the petitioner was an issue in the case. (# 15, p. 39). Specifically, on the third day of deliberation, the jury presented the following question, "Is the prosecution required to prove beyond a reasonable doubt, that the [petitioner] is mentally capable of telling right from wrong when a crime is committed, or is the [petitioner] obligated to give some evidence that he was mentally incapable of telling right from wrong?" (# 15, p. 39) Over counsel's objection, the trial judge instructed the jury that the Commonwealth would have the burden but that the mental capacity of the petitioner was not an issue in the case. (*Id.*).[13] The SJC held that there was no error, stating that:

> the judge properly instructed that the Commonwealth would have the burden of establishing the [petitioner's] criminal responsibility if it had been raised. The issue of criminal responsibility was not raised by the evidence in this case. The [petitioner] for the first time on appeal maintains that the jury's question pertained not only to the issue of criminal responsibility, but also to the issue of specific intent. The judge's instructions neither detracted from nor altered his other instructions regarding specific intent.

*Luna*, 418 Mass. at 755, 641 N.E.2d at 1054.

The petitioner argues that the trial court erred in failing to give the requested instruction because a "jury instruction which

---

12. In *Specht,* the Tenth Circuit held that a legal expert should not have been allowed to testify as to legal conclusions he would draw from the evidence presented in the case because such testimony would interfere with the judge's role as the sole arbiter of the law. *Specht,* 853 F.2d at 807–08. In *Zipkin,* the Sixth Circuit held that it was reversible error to allow a bankruptcy judge to testify as to legal conclusions because it "is the function of the trial judge to determine the law of the case" and it "is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles." *Zipkin,* 729 F.2d at 387. Finally, in *Baskes,* the Seventh Circuit held that it was not an error for the trial court to prohibit counsel from cross-examining a lawyer-witness about whether certain conduct was "wilful" or "unlawful." *Baskes,* 649 F.2d at 478.

13. The trial judge told the jury:

> I interpret the question…as asking whether the Commonwealth has the burden of proving what the law refers to as criminal responsibility, or, to put it another way, lack of insanity. The answer to that is, in a case where the issue of criminal responsibility or lack of insanity has been raised, the Commonwealth would have the burden of proof on that issue. In this case, no such issue has been raised so the Commonwealth does not have that burden in this case. Respondent's Memorandum, # 25, p. 39.

relieves the Commonwealth of the burden of proof on the critical issue of state of mind violates the Fourteenth Amendment. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)." (# 15, p. 40). The petitioner asserts further that:

> the question presented to the court [by the jury] as to the allocation of the burden of proof and whether [the petitioner] could distinguish right from wrong at the time of the crime charged, is just as relevant on the issue of specific intent as it is to an affirmative defense of insanity. When the trial judge instructed the jury that the issue was not raised by [the petitioner] in this case, and the Commonwealth did not have the burden of proof this could very well have led the jury to believe that all the evidence presented to negate specific intent could not be considered *and* that [the petitioner] bore the burden of proof to disprove the specific intent.

Memorandum,# 15, p. 41.

The respondent argues, on the other hand, that Ground 5 of the petition, like Ground 4, is merely a matter of state law and thus provides no basis for habeas relief. Even if the issue raised in Ground 5 is a constitutional matter, the respondent asserts that it is not contrary to or an unreasonable application of established Supreme Court law.

■ It is not entirely clear what the petitioner is arguing here. It appears that his basic premise is that because the jury was not instructed that the Commonwealth had to prove beyond a reasonable doubt that the petitioner was mentally capable of telling right from wrong, (and from this the jury could have inferred that the peti-

tioner had to disprove specific intent), the petitioner's rights to due process were violated. This notion makes little sense, however, because neither of the crimes the petitioner was charged with-filing false police reports (pursuant to Mass. Gen. L. c. 268, § 6A) and perjury (pursuant to Mass. Gen. L. c. 268, § 1)—requires a finding of specific intent.

One is guilty of filing a false police report pursuant to Massachusetts state law if he is "an officer or employee of the commonwealth" and he "files or publishes any false written report, minutes or statement, knowing the same to be false in a material manner." Mass. Gen. L. c. 268, § 6A. And, one is guilty of perjury under Massachusetts law if he is "lawfully required to depose the truth in a judicial proceeding" and he "wilfully swears or affirms falsely in a matter material to the issue or point in question." Mass. Gen. L. c. 268, § 1. Wilfulness is *not* the same thing as specific intent, and perjury is not a specific intent crime. *See Lack v. U.S.,* No. 91–11520, 1993 WL 565986, *13 (D.Mass. Oct.4, 1993)("Specific intent or bad motive is not required for a finding of wilfulness."); *U.S. v. Lewis,* 876 F.Supp. 308, 312 (D.Mass.1994)("perjury does not require proof that the defendant had...specific intent...."). Ground 5, is, accordingly, without merit.

Moreover, the SJC reviewed the contested instruction and found that the trial judge's instructions neither detracted from nor altered his other instructions regarding specific intent. To the extent that there is any issue raised by Ground 5, it seems that the issue is again one of state evidentiary law and as has been noted, issues of state law are not cognizable on habeas review.[14]

---

**14.** Certainly, in some cases, a faulty jury instruction could violate a defendant's constitu-

tional rights. *See generally Sandstrom,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. I do

The petitioner's attempts to rely on the *Sandstrom* and *Winship* cases are unavailing. In *Sandstrom*, the Supreme Court held that a certain jury instruction, to wit, that "the law presumes that a person intends the ordinary consequences of his voluntary acts", was constitutional error because the instruction "had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind." *Sandstrom*, 442 U.S. at 521, 99 S.Ct. 2450. In *In the Matter of Winship*, the Supreme Court held that the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged. *Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).[15]

Looking at the trial judge's instruction in the instant case through the *Sandstrom* and *Winship* "lens", I fail to see how the contested instruction (and the SJC's affirmance of that instruction) was contrary to or an unreasonable application of the rules set forth in those two cases.[16] As discussed above, the trial court's instruction would be contrary to the Supreme Court rule only if the state court "applie[d] a rule that contradicts the governing law set forth in [the Supreme Court's] cases....[or] if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] pre-

cedent." *Hurtado*, 245 F.3d at 15 (quoting *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495). This simply is not the case here. The trial court's instruction did not relieve the Commonwealth of the burden of proof on the question of petitioner's state of mind nor did it allow the Commonwealth to forego proving beyond a reasonable doubt every element necessary to maintain a perjury charge and a filing false police reports charge. Indeed, as far as I can tell, the instruction simply told the jury that the issue of criminal responsibility was not raised in the case and the instruction should have had no bearing on the specific intent issue (if that was even an issue in the case).

Similarly, the instruction was not an unreasonable application of established Supreme Court precedent because it did not identify the correct governing legal principle from the Supreme Court's decisions and then unreasonably apply that principle to the facts of the petitioner's case. To the extent that the principles set forth in *Sandstrom* and *Winship* apply to the trial judge's jury instruction at all, the trial court (and the SJC) properly applied those principles to the petitioner's case. Thus, Ground 5 of the petition, as well as the other four grounds, do not provide any basis to grant habeas relief to the petitioner.

## IV. Recommendations

For the reasons stated, I RECOMMEND that the petitioner's amended peti-

---

not believe, however, that is the circumstance here. *See* discussion, *infra*.

**15.** In the third case relied on by the petitioner, *Francis v. Franklin*, the Supreme Court held similarly—that the Due Process clause protects the accused against conviction except upon reasonable doubt of every fact necessary to constitute the crime with which he is charged and that the instruction at issue violated the due process clause. *Francis*, 471 U.S. at 313, 318, 105 S.Ct. 1965.

**16.** I need not even engage in this analysis since I have already decided that the issue is one of state law. However, assuming *arguendo* that the issue could be construed to have constitutional implications, I will decide whether the trial judge's instruction was contrary to or an unreasonable application of Supreme Court law.

tion for writ of habeas corpus (# 13) be DENIED.

### V. Review by the District Judge

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate [Judge]s in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).